UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LAURA BLEVINS-CLARK, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BEACON COMMUNITIES, *et al.*, )<br>)<br>Defendants. )<br>) | No. 5:22-cv-00281-GFVT<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court upon a Motion to Dismiss filed by Defendants Beacon Communities LLC, The Beacon Companies, Inc. and Keystone Values LLC. [R. 48.] For the reasons that follow, the motion will be **GRANTED in part** and **DENIED in part**.

**I**

Beacon Communities LLC[1], The Beacon Companies, Inc. and Keystone Values, LLC are for-profit entities sharing a principal place of business in Boston, Massachusetts. [R. 1 at 2-3.] According to Plaintiff Laura Blevins-Clark, Beacon and Keystone own and control co-Defendant entities NDC Reality Investments, LLC and NDC Real Estate Management, LLC. *Id*. at 3-4.

Ms. Blevins-Clark is the daughter of Ivan Blevins. *Id*. at 5. She asserts that in the late 1970s and early 1980s, her father Ivan became a Partner in Partnership Agreements with two predecessor corporations to the named Defendants. *Id*. The Partnership Agreements governed the management of five apartment complexes in Central and South-Central Kentucky. *Id*. at 6-9. Each apartment complex was owned and operated by its own Limited Partnership, which

---

[1] Beacon Communities, LLC is a subsidiary of The Beacon Companies, Inc. [R. 1 at 3.]

consisted of Mr. Blevins, Harold Baldwin, and the Defendants.[2]  *Id*. at 9.  In 2010, Mr. Blevins passed away and left Ms. Blevins-Clark as his sole heir.  *Id*. at 11.  Ms. Blevins-Clark asserts that since her father's death, the Partners in the Enterprise have treated her as a Substitute General Partner in her father's place.  *Id*. at 13.  That is, until 2022.

On February 23, 2022, the Defendants entered the Purchase & Sale Agreement with Amity Companies, LLC[3], for the sale of the Apartments.  *Id*. at 15.  Then, on March 24, 2022, Ms. Blevins-Clark received a letter from Defendant NIDC Housing Corp. claiming that NIDC had only recently been informed of Mr. Blevins' and Mr. Baldwin's deaths[4].  *Id*.  The letter notified Ms. Blevins-Clark that she had forfeited all ownership interests in her father's share of the Partnership Agreements because of her failure to notify the other Partners within 60 days of her father's death and to formally offer herself within that time period as a Substitute General Partner.  *Id*.  Apparently, each Partnership Agreement contains a provision outlining a protocol for becoming a Substitute General Partner.  *Id*.  According to Ms. Blevins-Clark, she had never seen nor read the Partnership Agreements, nor had she ever discussed their contents with Mr. Blevins before his death.  *Id*. at 16.

In May 2022, Ms. Blevins-Clark had her counsel write a letter to Defendants NIDC and Malvern Service Corp. accusing the Defendants of unfairly trying to oust her from the partnership.  *Id*.  Ms. Blevins-Clark's letter pointed out the fact that the Defendants had treated her as a Substitute General Partner for over a decade, as evidenced by filed tax returns.  *Id*.  NIDC and Malvern responded, doubling down on the proposition that the Ms. Blevins-Clark had never been a partner, and that she had forfeited any partnership interest she might have had by

---

[2] For clarity and consistency, the Court will refer to the Partnerships collectively as "the Enterprise."
[3] Amity Companies, LLC is not a party in this action.
[4] Mr. Baldwin passed away in 2019.  [R. 45 at 9.]

failure to comply with the strict terms of the Agreements. *Id*. Thus, seeking to protect her portion of the sale proceeds, which she alleges equal $1,921,875.00, Ms. Blevins-Clark commenced this action. [R. 1.] She seeks damages for her claims based in contract and tort law, as well as an injunction preventing the consummation of the Purchase and Sale Agreement. [R. 45 at 25.]

Defendants Beacon Communities LLC, The Beacon Companies, Inc. and Keystone Values, LLC moved for dismissal pursuant to Rule 12(b)(6), contending that Ms. Blevins-Clark has failed to state any actionable claims against them. The briefing period has ended and the matter is now ripe for review.

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id.*

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts that are consistent with but

3

not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006). The Court considers each of Ms. Blevins-Clark's claims in turn.

A

Count One of Ms. Blevins-Clark's Amended Complaint alleges breach of contract. Under Kentucky law, proving a breach of contract requires the complainant to establish three things: "1) the existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Taylor v. Univ. of the Cumberlands*, Civil Action No. 6:16-cv-00109-GFVT, 2018 U.S. Dist. LEXIS 152513 at *12 (E.D. Ky. Sep. 7, 2018) (quoting *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). Thus "[t]o establish a breach of contract claim under Kentucky law, the plaintiff must show clear and convincing evidence that an agreement existed between the parties." *MidAmerican Distrib., Inc. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 666-67 (E.D. Ky. 2011).

The Defendants argue, essentially, that Ms. Blevins-Clark fails to allege that they were parties to the Partnership Agreements. [R. 48 at 6.] According to the Defendants, they are not direct partners in the five limited partnerships. *Id.* at 4. In support, they cite the Partnership Agreements, which they aver support their position that they are not parties to the agreements. They also cite a Corporate Disclosure Statement prepared by counsel. [*See* R. 48-8.]

It may ultimately be the case that the Defendants are not parties to the Partnership Agreements. But the Court finds that making such a determination at this juncture is premature. Ms. Blevins-Clark certainly alleges that the Defendants are parties to the Partnership

4

Agreements. Her theory of the case is that the General Partners in each of the Limited Partnerships consisted of Mr. Blevins, Mr. Baldwin, and the Defendant entities. [R. 45 at 9.] She compares the Defendants to a set of Russian nesting dolls, alleging that "[t]he Defendants are all business organizations consisting of a series of interlocking, interconnected, and overlapping real estate investment and management companies." *Id*. Ms. Blevins-Clark also contends that the Defendants succeeded the original corporate Partners. So, although the Court can consider the Partnership Agreements at this stage because they are central to Ms. Blevins-Clark's claim, the Court finds that Ms. Blevins-Clark's allegations are sufficient. Again, it may turn out that the Defendant entities are not in fact parties to the Partnership Agreements. But that is the Defendants' own version of the facts. Ms. Blevins-Clark believes that the Defendants are parties to the Partnership Agreements through a complex corporate web, and she has made sufficient allegations indicating that her theory is plausible. Further, she has sufficiently alleged that the Defendants breached each of the Partnership Agreements by refusing to split profits, thereby causing damages totaling nearly two million dollars. Because she has alleged facts that could plausibly support each element, her breach of contract claim will not be dismissed.

**B**

Count Two of Ms. Blevins-Clark's complaint alleges anticipatory breach of contract. Anticipatory breach of contract is "an unequivocal repudiation or renunciation of an executory contract in advance of the time of performance." *Jordon v. Nickell*, 253 S.W.2d 237, 230 (Ky. 1952). Such a breach may, "at the election of the injured party, be regarded as an anticipatory breach and support an immediate action of damages without waiting for the time of performance." *Id*.

The Defendants argument seeking dismissal is the same as their argument relating to

Count One. But as the Court explained, Ms. Blevins-Clark has sufficiently alleged a plausible breach claim. Further, she alleges that in March 2022, the Defendants mailed her a letter indicating that she was not a member of the Enterprise; in other words, letting Ms. Blevins-Clark know that she would not be receiving any shared profits from the sale of the apartment complexes. [R. 45 at 7-8.] These facts, taken as true for the purposes of this Order, indicate an unequivocal repudiation of a duty to perform prior to the time of performance. Thus, Ms. Blevins-Clark's anticipatory breach claim may proceed.

## C

Count Three of Ms. Blevins-Clark's complaint alleges equitable estoppel. "Under Kentucky law, equitable estoppel requires both a material misrepresentation by one party and reliance by the other party[.]" *Williams v. Hawkins*, 594 S.W.3d 189, 193 (Ky. 2020). The essential elements of equitable estoppel are:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Id*. (citation omitted).

The Defendants argue that their lack of direct partnership involvement in the Enterprise defeats this claim. They aver that Ms. Blevins-Clark claim "describes certain actions taken by unnamed parties, not the Affiliate Defendants." [R. 48 at 6.] As explained above, however, the Defendants' very involvement appears to be a material fact in dispute. Thus, their argument that

6

they were not parties to the Enterprise still fails.

Additionally, Ms. Blevins-Clark sufficiently pleads a prima facie case for equitable estoppel. As to element one, she alleges that the Defendants repeatedly identified her as a "General Partner" and provided her with annual financial distributions from the Enterprise, thereby conveying the impression that they deemed Ms. Blevins-Clark to have assumed the role of a Substitute General Partner in place of her late-father. [R. 45 at 19.] As to element two, Ms. Blevins-Clark alleges that the Defendants had the intention and expectation that she would continue to behave and plan as if she were a General Partner. *Id*. As to the third element, Ms. Blevins-Clark alleges that the Defendants were in sole and exclusive possession of the Partnership Agreements, thereby having actual knowledge of the "real facts." *Id*. And as to the elements concerning her, Ms. Blevins-Clark alleges that she always relied in good faith upon the Defendants' actions, that she lacked knowledge of the Partnership Agreements' contents, and that her actions in trusting the Defendants' representations caused her detriment in the amount of $1,921,875.00. *Id*. at 19-20. Thus, the Court finds that dismissing Ms. Blevins-Clark's equitable estoppel claim is unwarranted.

**D**

Count Four of Ms. Blevins-Clark's complaint alleges unjust enrichment. Unjust enrichment was created "as a basis of restitution to prevent one person from keeping money or benefits belonging to another." *Rose v. Ackerson*, 374 S.W.3d 339, 343 (Ky. App. 2012) (quoting *Haeberle v. St. Paul Fire and Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. App. 1989)). Kentucky Courts have created a three-element test, which requires: "(1) benefit conferred upon defendant at plaintiff's expense, (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Kentucky Lottery*

7

*Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012).

The Defendants, again, aver that they are not direct partners in the Enterprise nor parties to the partnership agreements. That argument fails here too. Ms. Blevins-Clark has alleged that the Defendants benefited from her father's financial investment into the Enterprise and now retain the partnership interest with the intention of withholding the sale proceeds that should be attributed to Ms. Blevins-Clark's inherited share. [R. 45 at 20-21.] Because Ms. Blevins-Clark has adequately pled the elements of an unjust enrichment claim, her claim may proceed.

E

Counts Five and Six of Ms. Blevins-Clark's complaint asks the Court to apply the doctrines of laches and waiver. Laches and waiver are equitable defenses. In Kentucky, laches "serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action." *Mem'l Hall Museum v. Cunningham*, 455 F. Supp. 3d 347, 359 (W.D. Ky. 2020) (citations omitted). Similarly, waiver is "the intentional relinquishment of a known right." *Monumental Life Ins. Co. v. Nationwide Ret. Solutions, Inc.*, 242 F. Supp. 2d 438, 453 (W.D. Ky. 2003) (citations omitted).

Essentially, Ms. Blevins-Clark alleges that, because they failed to assert their right to oust Ms. Blevins-Clark from the Enterprise in 2010, the Defendants have relinquished their right to argue that Ms. Blevins-Clark violated the Partnership Agreements by her failure to follow the procedure by which the heirs of a deceased partner may apply to become a Substitute General Partner. The Defendants contend that they could not waive a right they have never had. The Court finds that Ms. Blevins-Clark's attempt to invoke laches and waiver is premature because

the Defendants have not sought to enforce Section 7.18(c)[5] of the Partnership Agreement. NIDC's allegedly cited Section 7.18(c) to Ms. Blevins-Clark in a March 2022 correspondence notifying her that she had forfeited all ownership interests in her father's share of the Enterprise for failing to follow the contracted procedures. But referencing a contract provision is not the same as filing an equitable claim seeking to enforce the contract. Should the Defendants file a claim seeking to enforce Section 7.18(c), then Ms. Blevins-Clark might raise the equitable defenses of laches and waiver. Doing so at this juncture, however, is inappropriate.

F

Count Seven of Ms. Blevin-Clark's complaint is similar to Counts Five and Six in that it asks the Court to apply the doctrine of substantial compliance to prevent the Defendants from ousting her based on a technical violation of the terms of the agreement. Kentucky courts typically "adhere to the doctrine of 'substantial compliance' when determining whether a change in beneficiary on an insurance policy is valid." *Fid. & Guar. Life Ins. Co. v. Teema*, Civ. No. 3:14-CV-00538-JHM, 2016 U.S. Dist. LEXIS 123075 at *6 (W.D. Ky. Sep. 12, 2016). Although the substantial compliance doctrine is typically applied to life insurance beneficiary designations, it has also been applied to other contexts, including annuities and Individual Retirement Accounts. *See Haste v. Vanguard Grp., Inc.*, 502 S.W.3d 611, 614-16 (Ky. Ct. App. 2016) (explaining that "[l]ife insurance policies, annuities and IRAs are similar in the respect that all arise from contractual relationships where one party agrees, 'for valuable consideration . . . to pay a sum of money on specified contingency to a designated person called a beneficiary.'")

---

[5] Ms. Blevins-Clark points to Section 7.18(c) of the Greater Corbin Manor Partnership Agreement as an example of the provision outlining the protocol for an heir to apply to become a Substitute General Partner. [*See* R. 45 at 21 and R. 1-11.] She alleges that all of the Partnership Agreements contain a provision with the same or substantially similar language as Section 7.18(c). [R. 45 at 15.] Thus, for consistency and simplicity, the Court will refer to all of the provisions collectively as Section 7.18(c).

(citation omitted).  In other words, the substantial compliance doctrine is typically applied to instances where an insured or policy holder "takes some action to change his beneficiary but, due to a failure to comply with all of the policy terms, the change is not completely effectuated." *Minn. Life Ins. Co. v. Hamilton*, Case No. 5:07-CV-173-R, 2009 U.S. Dist. LEXIS 1476 at *9-10 (W.D. Ky. Jan. 9, 2009) (citing *Hart v. Hart*, 201 S.W.3d 457, 459 (Ky. 2006); *Hill v. Union Central Life Ins. Co.*, 513 S.W.2d 808 (Ky. 1974); *Vaughn v. Baker*, 438 S.W.2d 517, 519 (Ky. 1969)).

Ms. Blevins-Clark alleges that she substantially complied with Section 7.18(c) by continuing to honor the terms of the partnership agreements and assuming her father's role and duties.  [R. 45 at 24.]  Despite whether or not that may be true, the Court does not find the doctrine of substantial compliance to be applicable in this case.  Given the fact that Kentucky's courts have almost exclusively applied the doctrine in cases concerning insurance contracts or other instances involving some sort of beneficiary designation, the Court finds it unwise to apply the doctrine to a contractual dispute outside of the aforementioned contexts.  Moreover, because the Defendants have not even sought to enforce Section 7.18(c), analyzing substantial compliance would be unwarranted.  Thus, Count Seven will be dismissed.

G

The Court finds that a short discussion of corporate law is necessary in order to address some ancillary arguments put forth by the Defendants.  For each count, Ms. Blevins-Clark has alleged that the Defendants are "vicariously liable under the legal doctrine of *respondeat superior* for the tortious acts and omissions of all of the co-Defendants who are their subsidiaries." [*See* R. 45.]  As the Defendants clearly point out, the doctrine of *respondeat superior* typically applies to situations where an employer is being held liable for the tortious

actions of an employee. *See e.g.*, *Patterson v. Blair*, 172 S.W.3d 361 (Ky. 2005) (explaining the competing rationales for the doctrine of *respondeat superior* in determining the contours of the rule to be applied to the intentional torts of employees). But the doctrine's economic rationale, essentially, is to allocate risk. *See id.* at 364-65. Thus, in cases where a stockholder does not merely use its control of the corporation in the normal and usual manner, but uses the corporation as an agent for the transaction of part of the stockholder's business, liability will rest upon the principle of *respondeat superior*. *Rapid Transit Subway Const. Co. v. New York*, 259 N.Y. 472, 488 (N.Y. 1932).

So, despite the Defendants' attempt to succeed on distinguishing "respondeat superior" and "vicarious liability," the Court will not get bogged down in an analysis of legal nomenclature. Despite Ms. Blevins-Clark's terminology, the Court, and apparently the Defendants too, understands the gist of Ms. Blevins-Clark's complaint; she is seeking to hold the Defendants liable for the alleged tortious actions of their subsidiary companies. *See Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 674 Fed. App'x 482, 486 (6th Cir. 2017) ("According to the Kentucky Supreme Court, corporate veil piercing 'governs the *vicarious liability* of a shareholder for the debts of a corporation.'") (quoting *Smith v. Isaacs*, 777 S.W.2d 912, 913 (Ky. 1989)). Accordingly, the Defendants' veil piercing arguments are more appropriate for thorough examination.

"[T]he doctrine of piercing the corporate veil arises in equity." *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 175 (Ky. 2012) (citations omitted). "Under Kentucky law, separate corporate interests, including subsidiaries and affiliates… are separate legal entities and must be recognized and treated as such unless there is some reason to pierce the corporate veil." *Mattingly v. R.J. Corman R.R. Grp., LLC*, 90 F.4th 478, 488 (6th Cir. 2024)

(quoting *Hazard Coal Corp. v. Ky. W. Va. Gas Co.*, 311 F.3d 733, 739 (6th Cir. 2002)).  Thus, typically, "a parent corporation … is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citations omitted).  To pierce the corporate veil, two dispositive elements must be met:  "1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 165 (Ky. 2012) (emphasis in original).  "Fraud will be sanctioned or injustice promoted where a party would be unjustly enriched; [where] a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." *CNH Capital Am. LLC v. Hunt Tractor, Inc.*, No. 13-6007, 2014 U.S. App. LEXIS 12722 at *17-18 (6th Cir. July 2, 2014) (quoting *Inter-Tel Techs., Inc.*, 360 S.W.3d at 164) (internal quotations omitted)).

Here, Ms. Blevins-Clark adequately alleges sufficient facts to get her over the pleading hurdle.  She alleges that the two Beacon entities and Keystone share the same principal business office in Boston, and that Beacon purchased NDC Reality Investments and NDC Real Estate Management in 2016.  [R. 45 at 9.]  She also alleges that Keystone is the sole member of NDC Reality Investments, and that Beacon Communities is the sole member of NDC Real Estate Management.  *Id*.  She contends that Beacon controls all of the actions of NDC Reality Investments and of NDC Real Estate Management, and that each corporate layer is an "interlocking corporate shell …." *Id*. at 4, 9.  These facts, although broad, could plausibly support a finding of domination by Beacon and Keystone and circumstances that would sanction fraud or promote injustice.  As Ms. Blevins-Clark admits in her response, it may very well be the

12

case that discovery reveals that NRI and NREM are solvent companies and that there is no misuse of the corporate form. But such considerations are best left for the summary judgment stage. At this juncture, Ms. Blevins-Clark has alleged enough facts that might plausibly support veil piercing.

### H

As a housekeeping matter, the Court will briefly address the Defendants' argument regarding aiding and abetting. In her Amended Complaint, Ms. Blevins-Clark alleges that the Defendants have "acted in unison and concert with each other" and are "jointly and severally liable for the tortious conduct of the others." [*See* R. 45.] The Defendants aver that Ms. Blevins-Clark has not alleged a separate tort claim for aiding and abetting. [R. 48 at 10.] The Court agrees.

In reviewing Ms. Blevins-Clark's Amended Complaint and her briefing, it is apparent that Ms. Blevins-Clark is not seeking to add a separate tort action for aiding and abetting. Rather, her invocation of joint and several liability appears to be in reference to Kentucky Revised Statute Section 362.220, which outlines the nature of a partner's liability under the Kentucky Uniform Partnership Act. Essentially, the Court believes that Ms. Blevins-Clark is alleging that the Defendants, who are all Partners in the Enterprise made up of Partnership Agreements, are jointly and severally liable for each co-Partner's liability. Of course, whether any of the Partners are actually at fault is a question for a later day. But, in any event, the Court does not find that Ms. Blevins-Clark has alleged, nor sought to allege, a tort claim for aiding and abetting.

### III

To survive a motion to dismiss, the complaint "must contain either direct or inferential

allegations" establishing each material element required for recovery under some actionable legal theory. *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (internal quotation marks omitted)). Here, Ms. Blevins-Clark has presented sufficient facts establishing that she may be entitled to relief on a number of claims. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion to Dismiss [**R. 48**] is **GRANTED in part**;
2. Counts Five, Six, and Seven of Ms. Blevins-Clark's Amended Complaint [R. 45] **SHALL be dismissed**;
3. Counts One, Two, Three, Four, and Five **SHALL** be permitted to proceed in the normal course; and
4. Within **thirty (30) days** of this order, the Parties **SHALL** submit to the Court a joint filing, which shall include a newly proposed dispositive motions deadline and a newly proposed trial date.

This the 23rd day of August 2024.

Gregory F. Van Tatenhove
United States District Judge