# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### LEXINGTON

| | | |
|---|---|---|
| **LAURA BLEVINS-CLARK,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:22-CV-00281-GFVT-MAS** |
| | ) | |
| **BEACON COMMUNITIES, LLC,** *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION & ORDER

Defendants NIDC Housing Corp. and Malvern Service Corp. (collectively, "NIDC Defendants") have filed a motion to compel [DE 103] seeking additional discovery responses from Defendants Beacon Communities LLC, The Beacon Companies, Inc., Keystone Values LLC, NDC Realty Investments LLC, and NDC Real Estate Management LLC (collectively, "Beacon Defendants"). In short, the NIDC Defendants argue that the Beacon Defendants have failed to fully respond to several discovery requests, all with unique issues and circumstances, and have improperly claimed attorney client privilege over responsive documents listed in a privilege log and deposition testimony. Plaintiff Laura Blevins-Clark also filed a motion to compel, focused solely on claimed deficiencies in the Beacon Defendants' privilege log. [DE 101]. The Court has thoroughly reviewed the relevant discovery requests, the Beacon Defendants' responses, and the arguments set forth by the

parties relevant to their disputes. As set forth below, the Court will grant some of the NIDC Defendants' demands and deny others, including its request for sanctions, and grant Blevins-Clark's motion to compel a revised privilege log.

## I.   <u>RELEVANT BACKGROUND</u>

Decades ago, Ivan Blevins and Harold Baldwin owned and operated several large apartment complexes in eastern and southern Kentucky. [(Amended Complaint) DE 45, Page ID# 379-80]. The two men also created and modified over the years several partnership agreements to control, among other things, these properties. [(Amended Complaint) DE 45, Page ID# 380].

Plaintiff Laura Blevins-Clark is the daughter and claimed successor to Blevins' partnership interest in these various companies following his death in 2010. [(Amended Complaint) DE 45, Page ID# 380]. Per Blevins-Clark, after her father's passing, she has acted as a general partner in these various partnerships, received distributions in line with her partnership interests, and participated in the business activities of these partnerships. [(Amended Complaint) DE 45, Page ID# 380]. Nevertheless, in March 2022, the Beacon Defendants and the NIDC Defendants informed Blevins-Clark that she had forfeited her father's interest in the partnerships. [(Amended Complaint) DE 45, Page ID# 380]. More importantly, they also informed Blevins-Clark the underlying properties were being sold, and she would not receive any proceeds from that sale. [(Amended Complaint) DE 45, Page ID# 380].

The result was that Blevins-Clark brought the current lawsuit [DE 45], and the NIDC Defendants brought crossclaims against the Beacon Defendants [DE 73].

## II.    WRITTEN DISCOVERY

During litigation, every party is entitled to take discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  Of course, relevance is in the eye of the beholder.  The NIDC Defendants have propounded discovery requests to the Beacon Defendants to which the latter responded.  The NIDC Defendants have filed a motion to compel the Beacon Defendants to provide additional information concerning specific discovery requests arguing the Beacon Defendants are "standing in the way of discovery."  [DE 103, Page ID# 1596].

## A.    INTERROGATORY NO. 18

Interrogatory No. 18 asks the Beacon Defendants to "[i]dentify every officer, director, or employee partially or wholly responsible for, or involved in, your decisions to withhold either Ivan Blevins's or Harold Baldwin's former interests in the Partnerships from NIDC Housing Corp."  [DE 103-3, Page ID# 1650].  After objections, the Beacon Defendants responded that funds representing the Blevins and Baldwin interests are being held in an escrow account waiting to be disbursed upon resolution of the litigation.  [DE 103-3, Page ID# 1650].

The NIDC Defendants complain that the Beacon Defendants are confusing the word "interests."  The Beacon Defendants have interpreted "interests" to be the funds reflecting each person's interest in the partnerships.  The NIDC Defendants argue that "interests" mean something more.  "While funds from the sale of the

Partnerships' properties may be *attributable* to the interests, *i.e.*, distributions to the partners according to their ownership percentages, the interests are something different—they are an ownership stake—and the Beacon Defendants have in fact withheld the Blevins interests from being assigned to NIDC." [DE 103, Page ID# 1604 (emphasis in original)].

The Beacon Defendants respond contending that the term "interests" was vague such that either the legal partnership interests or the money representing those interests could fit under the way the NIDC Defendants have phrased the request. [DE 107, Page ID# 1946]. The Court agrees. Parties could always use shifting definitions to require more and more of responding parties. The Beacon Defendants responded and answered the interrogatory under a plain and sane reading. The fault rests with the NIDC Defendants if they wanted something else or more specific. *See Orr v. Riederer*, No. 10-1303-CM, 2011 WL 13234419, at *4 (D. Kansas July 1, 2011) (denying a motion to compel an interrogatory response as the term is vague and subject to multiple interpretations). The Beacon Defendants are relieved from responding further.

**B.    I<small>NTERROGATORY</small> N<small>O</small>. 19**

The next interrogatory asks the Beacon Defendants to "[i]dentify every present or future 'final payable' or 'representation and warranty' that you allege exists to justify your withholding of funds from the partners in the Partnerships for those purposes, as those withholdings were stated in documents you supplied to the partners of the Partnerships." [DE 103-3, Page ID# 1650]. The Beacon Defendants

directed the NIDC Defendants to review the general ledgers. [DE 103-3, Page ID# 1650].

Rule 33(d) permits a party, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Here, both parties agree that the Beacon Defendants have elected, rather than to answer, to simply point to the voluminous general ledgers of the partnership and conclude, in simpler terms, that the NIDC Defendants can figure it out themselves.

However, "Rule 33(d) is not intended to be used as 'a procedural device for avoiding the duty to give information.' In other words, '[t]he responding party may not avoid answers by imposing on the interrogating party a mass of business records from which answers cannot be ascertained by a person unfamiliar with them.' A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also 'must specify where in the records the answers [can] be found.'" *Mullins v. Prudential Ins. Co. of America*, 267 F.R.D. 504, 514 (W.D. Ky. 2010) (internal citations omitted). The Beacon Defendants cannot simply hide behind "general ledgers" with over "100,000 detailed log entries" and simply ask the NIDC Defendants to figure it out. The Court grants the NIDC

Defendants' motion and orders the Beacon Defendants to certify the answers are contained in the general ledger (something not contained in the verified Interrogatory response) and specify by bates stamp page and/or log entry information that would permit the NIDC Defendants the ability to discern the responsive answer.

## C.    INTERROGATORY NO. 22 AND REQUEST FOR PRODUCTION NO. 5

The NIDC Defendants next complain about the responses of the Beacon Defendants relevant to Interrogatory No. 22 and the related Request for Production of Documents No. 5.  Both seek information and documents concerning the Beacon Defendants position that they could use partnership funds to pay their counsel in this case.  The NIDC Defendants, in their crossclaim against the Beacon Defendants, have alleged that such payment is impermissible.  [DE 103, Page ID# 1605].  The discovery requests seek identification of those payments, including which partnership is making those payments and from which bank account.  [DE 103-3, Page ID 1652, 1656].  The Beacon Defendants generally object that they have produced general ledgers that detail the information.

Like with the previously discussed discovery request, the Court agrees with the Beacon Defendants that they can direct the NIDC Defendants to the general ledgers in possession of both parties per Rule 33(d).  However, again, the Beacon Defendants must certify the information is contained in those ledgers and identify in the general ledger with particularity where that information is contained.  Moreover, the information must demonstrate the amount of payment, the date of the payment, the entity from which the payment is being made, and the account from which the funds are being drawn.  This information is not only relevant, but it is plainly not

protected by any claim of privilege. The motion from the NIDC Defendants is granted as to this discovery request.

## D.    REQUESTS FOR PRODUCTION OF DOCUMENTS NO. 8 & 9

Through these two requests, the NIDC Defendants seek agreements between Keystone Values LLC, NDCRI, and/or other Beacon Defendants.

The Beacon Defendants initially respond that the term "agreements" is overly broad and burdensome as well as triggers possible privileged communications. The Court rejects these objections without more. "A party objecting to a discovery request must particularly state the objection grounds; a boilerplate objection has no legal effect." *Davis v. American Highwall Mining, LLC*, No. 6:19-cv-96, 2020 WL 5494520 (E.D. Ky. Sept. 11, 2020) (collecting several authorities in support). Even setting aside those objections, however, the Beacon Defendants argue that they have produced any and all relevant agreements. [DE 107, Page ID# 1949-50]. The NIDC Defendants suggest there is more. Yet, the Court cannot compel a party to produce that which does not exist. Until shown some evidence suggesting there are more agreements not yet produced, the Court will take the Beacon Defendants at their word.

## E.    REQUEST FOR ADMISSION NO. 11

Request for Admission 11 asks the Beacon Defendants to admit that they still retain possession of the funds attributable to the partnership interests formerly belonging to Baldwin. The Beacon Defendants objected that such a request is premature depending on the outcome of this litigation. Maybe so, but the NIDC Defendants are not seeking the response of the Beacon Defendants at some unknown

date.  Currently, considering its knowledge and position (both legal and factual) in the litigation, the Beacon Defendants can surely answer whether it retains funds attributable to the partnership interest of Baldwin.  The Court understands that the litigation may later direct those funds elsewhere.  Regardless, the Beacon Defendants must answer that question.

## F.    INTERROGATORIES 7, 8, 9, 10, 11, 12, 14, 24 AND REQUESTS FOR ADMISSIONS 5, 7, 8, 9, AND 10

Both parties agree that the NIDC Defendants have propounded several discovery requests seeking to learn when the Beacon Defendants learned of Blevins and Baldwin's death.  [DE 103, Page ID# 1607-08; DE 107, Page ID# 1952].  In its response, the Beacon Defendants emphasize their role in the structure of the partnerships.  Namely, the Beacon Defendants did not acquire an interest in NDCRI through Keystone, a Beacon Defendant, until 2017.  Consequently, the Beacon Defendants responded that they "are unaware of any responsive communications." [DE 103-3].  The NIDC Defendants argue that the Beacon Defendants became aware that Blevins and Baldwin passed at some point either during the acquisition or after the acquisition.  However, the analysis is much more nuanced depending upon the discovery requests.  The Court will take each in turn.

### 1.    Interrogatories

Interrogatories Nos. 7 & 8 simply ask when the Beacon Defendants became aware of the death of Blevins and Baldwin, respectively.  [DE 103-3, Page ID# 1642]. For Blevins, the Beacon Defendants responded that the information is "unknowable." [DE 103-3, Page ID# 1642].  For Baldwin, the Beacon Defendants averred that they

became aware of his death on September 14, 2022, and cited a specific document. The Beacon Defendants have fully satisfied their discovery obligation for Interrogatory No. 8. Returning to No. 7, the Beacon Defendants' response seems impossible. This very litigation concerns the passing of Blevins and how his passing impacted the ownership of the partnership shares. At some point, the Beacon Defendants became aware of Blevins' death between the purchase in 2017 and the filing of this lawsuit. The Beacon Defendants must provide that information.

Interrogatories Nos. 9 & 10 ask the Beacon Defendants when they informed the various partnerships of the death of Blevins and Baldwin, respectively. Like the prior pair, the Beacon Defendants provide a date and document for Baldwin but conclude that such documents for Blevins are "outside of their possession, custody or control." [DE 103-3, Page ID# 1643]. NIDC Defendants' motion does not directly challenge this claim. Consequently, the Court will conclude that the Beacon Defendants, to the extent they had such a communication informing the partnership of Blevins' death, is not in the possession, custody, or control of the Beacon Defendants.

The same conclusion applies for Interrogatories Nos. 11 and 14. With both, the Beacon Defendants respond that any responsive documents are "outside of their possession, custody or control." [DE 103-3, Page ID# 1645, 1647]. Again, nowhere in NIDC Defendants' motion do they suggest the Beacon Defendants are in possession of such responsive information or documents. Thus, the Court will again take the Beacon Defendants at their word barring some evidence to the contrary.

For Interrogatory No. 12, the Beacon Defendants responded that they "are unaware of any responsive communications." [DE 103-3, Page ID# 1646]. The Beacon Defendants cannot be required to produce information that does not exist. Until provided evidence suggesting something else, the Court will deny the NIDC Defendants' request.

## 2.    **Requests for Admission**

Turning to the various requests for admission challenged by the NIDC Defendants, all seek the Beacon Defendants' admission or denial about the receipt of certain information or communications. For all the challenged requests for admission, the Beacon Defendants have given the same response: "The Beacon Defendants object to the foregoing Requests for Admission on the grounds that it is vague, ambiguous and seeks information outside of the possession, custody or control of the Beacon Defendants. Given the requested information is unknowable to the Beacon Defendants, denied." [DE 103-2].

In their motion to compel, the NIDC Defendants never explain their complaints about this response. As with the interrogatories, the Beacon Defendants have provided an answer to the request. The NIDC Defendants have not provided any argument or evidence to undercut that response. Rather, the NIDC Defendants only argue that the Beacon Defendants surely knew when they became aware that Blevins passed away, an argument only relevant to Interrogatory No. 7. [DE 103, Page ID# 1607-09]. Thus, the Beacon Defendants have satisfied their discovery obligation as the record currently stands before the Court.

### G.    I NTERROGATORY N O . 20

The last written discovery request issue set forth in the NIDC Defendants' motion to compel concerns Interrogatory No. 20.  There, the NIDC Defendants pose a contention interrogatory asking the Beacon Defendants to explain where they agree or disagree with statements made by Paul Bouton, an in-house attorney for the Beacon Defendants, in a specific communication.  [DE 103-3, Page ID# 1651].  The Beacon Defendants object under the theory that explaining Bouton's statements will reveal privileged information.  The Court disagrees.

There is little question that the communication at issue is not privileged as the Beacon Defendants produced the document.  Although the Court has not seen the document, the interrogatory suggests that Bouton expressed some non-legal opinion about certain issues.  The Beacon Defendants have now been asked to explain where they agree or disagree with Bouton.  The Beacon Defendants do not get to hide behind a privilege for a document that has been produced.  Rule 33 permits interrogatories that "[ask] for an opinion or contention that relates to fact or the application of law to fact."  F ED . R. C IV . P. 33(a)(2).  "Contention interrogatories" that ask a party what it contends or to state all the facts upon which it bases a contention are perfectly legitimate. *Barnes v. District of Columbia*, 270 F.R.D. 21, 24 (D.D.C. 2010).  Indeed, the advisory committee note to Rule 33 indicates that contention interrogatories "can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." *Barnes*, 270 F.R.D. at 24 (quoting F ED . R. C IV . P. 33 advisory committee's note (1970)).  The Court does not require the Beacon Defendants to provide a legal opinion on Bouton's statements.  Rather, the Court requires the Beacon Defendants

to detail where they agree or disagree with the factual and non-legal statements made by Bouton in the communication. *See King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 5 n. 3 (D.D.C. 1987) ("[I]n answering contention interrogatories the party is only giving the factual specifics which the party contends supports a claim, and this in no way impinges on the attorney's impressions or analysis as to how the attorney will endeavor to apply the law to the facts. If this elementary principle were not applicable, contention interrogatories would not exist.").

## H.    NIDC DEFENDANTS' SECOND SET OF DISCOVERY REQUESTS TO THE BEACON DEFENDANTS

In their second set of discovery requests to the Beacon Defendants, the NIDC Defendants have focused on correspondence from the Beacon Defendants concerning Albany Manor, a partnership to which the NIDC Defendants do not belong. [DE 103, Page ID# 1616]. The relevance of the issue, per the NIDC Defendants, is that the Beacon Defendants are involved in Albany Manor. And per the correspondence, the Beacon Defendants took certain actions under the partnership agreement that the NIDC Defendants now complain the Beacon Defendants will not take in the partnership where both the Beacon Defendants and the NIDC Defendants are involved. [DE 103, Page ID# 1616-17]. In other words, NIDC Defendants argue that the Beacon Defendants took certain actions with Albany Manor for which they refuse to take even though the partnership agreements are the same. [DE 103, Page ID# 1617].

The Beacon Defendants object arguing that such information is irrelevant. "NIDC's requests related to Albany Manor are nothing more than a fishing expedition." [DE 107, Page ID# 1956].

As already noted earlier, every party is entitled to take discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The Rules are structured "to allow broad discovery[,]" but such breadth "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). Here, NIDC Defendants point to the fact that the Beacon Defendants are acting under one contract while taking a contrary act under what is surely an identical contract. The Beacon Defendants are not required to necessarily take consistent positions. However, the NIDC Defendants can surely ask the Beacon Defendants to explain the contrary conduct. Regardless of the explanation, the NIDC Defendants have established that the information crosses the Rule 26 relevance bar. *See*, *e.g.*, *Herriges v. Cty. of Macomb*, No. CV 19-12193, 2020 WL 4726940, at *2 (E.D. Mich. Aug. 14, 2020) *488 (emphasizing that "[t]he requesting party has an extremely low bar for showing relevance" under Rule 26(b)).

NIDC Defendants' motion to compel is granted as to discovery related to Albany Manor.

### III.   ATTORNEY CLIENT PRIVILEGE PROTECTION

In this diversity case, Kentucky law governs the application of the attorney client privilege.  FED. R. EVID. R. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.");  *See In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) ("In a diversity case, the court applies . . . state law to resolve attorney-client claims."); *South Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 Fed. App'x 401 (6th Cir. 2019) (applying Kentucky attorney client privilege law in a diversity case).

Kentucky Rule of Evidence ("KRE") 503 provides the Commonwealth's equivalent of the attorney client privilege.  It safeguards a client's ability "to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client[.]" Ky. R. Evid. 503(b).  KRE 503 extends to communications:

> Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
>
> Between the lawyer and a representative of the lawyer;
>
> By the client or a representative of the client or the client's lawyer or a representative of the lawyer representing another party in a pending action and concerning a matter of common interest therein;
>
> Between representatives of the client or between the client and a representative of the client; or
>
> Among lawyers and their representatives representing the same client.

*Id.*

"[T]he privilege 'protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege and is triggered only by a

client's request for legal, as contrasted with business, advice." *Univ. of Kentucky v. Lexington H-L Servs., Inc.*, 579 S.W.3d 858, 864 (Ky. Ct. App. 2018) (quoting *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002) (cleaned up)). Determining whether the privilege applies is a two-prong inquiry. "First, the statements must actually be confidential, meaning they are 'not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.'" *Id.* (quoting *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012)). Disclosure of a covered to a communication to a third-party may result in waiver of the privilege. *See 3M Co. v. Engle*, 328 S.W.3d 184, 189 (Ky. 2010). "Second, the statements must be made for the purpose of obtaining or furthering the rendition of legal services to the client." *Univ. of Kentucky*, 579 S.W.3d at 864.

"[T]he burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *The St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005) (footnote omitted); *accord In re Grand Jury Investigation* No. 83-2-35, 723 F.2d 447, 454 (6th Cir. 1983). "[I]t is the proponent's duty to offer sufficient detail to each supposedly privileged document to persuade the court that the information in question is not discoverable." *Reynolds v. Wells*, 2016 WL 7330067, at *3 (Ky. 2016).

## A.   PRIVILEGE LOG

Blevins-Clark and the NDIC Defendants make similar complaints about the Beacon Defendant's privilege log, however, their proposed remedies differ. Blevins-

Clark and the NDIC Defendants agree, however, that they cannot determine whether the attorney client privilege has been properly asserted for the majority of the 658 withheld documents. Per the parties, Beacon has not sufficiently identified either who the communication involves and/or provided an adequate description of the communication.

Beacon takes issue with these arguments, explaining that "the Beacon Defendants went so far as to highlight the name of each lawyer on the privilege log who served in a legal role after Plaintiff's request for this information[,]" and "[e]ach of these privileged communications are listed on the privileged log along with information about the date the document was prepared, the author, recipients, the subject line and the reason it has been withheld." [DE 10 at Page ID# 1965-66]. Beacon also addresses several of the NDIC Defendants' specific complaints, stating that "[s]ome of these communications are internal privileged communications, while other entries on the privilege log clearly indicate the e-mail communication withheld is between the Beacon Defendants' and their outside counsel[,]" and the "description of [some of the] attachment made clear the documents had otherwise been produce" and communications with Kathleen Sheehan should be afforded the privilege because she "remained employed in Beacon Communities' legal department" until July 2022. [DE107 at Page ID# 1958].

These statements may be true; however, the Court—and the other parties— cannot conceivably discern that from the privilege log Beacon produced. If Beacon has included produced documents and withheld documents on the privilege log, this

unnecessarily confuses the issues (and the Court).  For illustrative purposes, the Court has selected some portions of the grossly deficient privilege log, below:

*Laura Blevins Clark v. Beacon Communities, et al.*

| No. | Date/Time Sent | Email From | Email To | Email CC | Description | Reference Number | Privilege |
|---|---|---|---|---|---|---|---|
| 201 | 4/29/2021 10:02 | Rachel Majorowski [rmajorowski@BeaconCommunities LLC.com] | Ellen Morreale [EMorreale@Beacon CommunitiesLLC.com] | | New Voicemail Received - Laura Blevins- Clark | REL0000146873.0 006 | Withhold/Privileged- Atty Client |
| 202 | | | | | voicemail-2021-04-26_090740AM-2704695428 | REL0000146873.0 006.0001 | Withhold/Privileged- Atty Client |
| 203 | 4/26/2021 9:08 | voicemail@abacus group.com | Rachel Majorowski [rmajorowski@Beac onCommunitiesLLC. com] | | New Voicemail Received | REL0000146873.0 007 | Withhold/Privileged- Atty Client |
| 204 | | | | | voicemail-2021-04-26_090740AM-2704695428 | REL0000146873.0 007.0001 | Withhold/Privileged- Atty Client |
| 205 | 4/5/2021 13:29 | voicemail@abacus group.com | Rachel Majorowski [rmajorowski@Beac onCommunitiesLLC. com] | | New Voicemail Received | REL0000146873.0 008 | Withhold/Privileged- Atty Client |
| 206 | | | | | voicemail-2021-04-05_012910PM-2704695428.wav | REL0000146873.0 008.0001 | Withhold/Privileged- Atty Client |

These entries appear to be automated messages from Beacon's voicemail service to someone named Rachel Majorowski, withheld on the basis of attorney client privilege.  None of these entries provide any context for the basis of the privilege nor identify an attorney or legal staff was even involved in these communications.  Even if an attorney or legal staff is involved in these communications, "New Voicemail Received" does not offer any explanation as to why this communication should be withheld based on attorney client privilege.  Entries 251 through 254 are similarly deficient:

*Laura Blevins Clark v. Beacon Communities, et al.*

| No. | Date/Time Sent | Email From | Email To | Email CC | Description | Reference Number | Privilege |
|---|---|---|---|---|---|---|---|
| 251 | 12/28/2021 9:29 | Kathleen Sheehan [KSheehan@BeaconCommunitiesLLC.com] | pbouton@nixonpeabody.com;Ellen Morreale [EMorreale@BeaconCommunitiesLLC.com];Jamie Pennington [jpennington@BeaconCommunitiesLLC.com];Carolyn Fuchs [cfuchs@BeaconCommunitiesLLC.com]; Nicole Clement [nclement@BeaconCommunitiesLLC.com];Lisa Reich [lreich@BeaconCommunitiesLLC.com];Mary Corthell [MCorthell@BeaconCommunitiesLLC.com] | | Tax Returns Permanent Records | REL0000145735 | Withhold/Privileged-Atty Client AND Work Product |
| 252 | 12/28/2021 10:01 | Lisa Reich [lreich@BeaconCommunitiesLLC.com] | Jamie Pennington [jpennington@BeaconCommunitiesLLC.com] | | Keystone Portfolio-Baldwin and Blevin interests | REL0000252062 | Withhold/Privileged-Atty Client |
| 253 | 12/28/2021 10:25 | Jamie Pennington | Lisa Reich [lreich@BeaconCommunitiesLLC.com] | | Keystone Portfolio-Baldwin and Blevin interests | REL0000175036 | Withhold/Privileged-Atty Client |
| 254 | 12/28/2021 10:50 | Ellen Morreale | Rachel Majorowski [rmajorowski@BeaconCommunitiesLLC.com] | | Tax Returns Permanent Records | REL0000023000 | Withhold/Privileged-Atty Client |

Although Blevins-Clark acknowledges that Paul Bouton and Nicole Clement are in-house counsel who may be properly covered by the attorney client privilege, Blevins-Clark rightfully argues that the description in this privilege log are woefully wanting. Even though entry 251 is a communication with in-house counsel, the description "Tax Returns Permanent Record" does not explain why the attorney client privilege applies to this document. There is no indication that this communication was for the purpose of obtaining legal advice.[1] The next three entries do not appear to list an attorney or legal staff and therefore cannot be withheld on the basis of privilege.

---

[1] Beacon has also withheld a substantial number of documents based on the protection of attorney work product. Blevins-Clark and NIDC do not challenge the claim of work-product protection and, therefore, the Court does not address it herein.

Blevins-Clark asks the Court to require the Beacon Defendants to produce a thorough privilege log that contains the "date, author and all recipients of the document, subject matter, and an explanation as to why the document should be privileged and not produced in discovery." [DE 101 at Page ID# 1421, quoting *Eitel v. PNC Bank, N.A.,* No. 3:20-CV-12-RGJ, 2022 WL 4636117 (W.D. Ky. Sept. 30, 2022)]. The NIDC Defendants request *in camera* review of several hundred documents on the privilege log.

The Court finds that the request for *in camera* review is premature because the privilege log is so woefully deficient that the Court cannot even assess the appropriateness of the request. The NIDC Defendants may renew this request, if necessary, at a later date, keeping in mind that in camera review "can be an enormous burden to the court, about which the parties and their attorneys often seem to be blissfully unconcerned." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D. Md., 2008). At this time, the Court will order the Beacon Defendants to produce a privilege log that clearly identifies who in the communication is an attorney or legal staff, the basis for withholding the document, and a *specific description* of why the privilege was claimed. Failure to do so—especially in light of this "second bite at the apple"—risks the Beacon Defendants waiving their claim of privilege.

## B. CLAIMS OF PRIVILEGE IN DEPOSITIONS

The NIDC Defendants claim that the Beacon Defendants have "farmed out" business functions to attorneys and then improperly claimed attorney client privilege. The NIDC Defendants point to several instances where "counsel for Beacon Defendants has prevented Beacon employees from answering deposition questions

about business functions to attorneys.  For instance, they are claiming privilege over the meaning of communications with third parties if attorneys drafted the communications." [DE 103 at Page ID# 1612].  Specifically, during the deposition of the Beacon Defendant's employee Mary Corthell, counsel for the NIDC Defendants asked Corthell if someone explained to her the substance of a letter she signed as the author but had been authored by someone else.  Counsel for the Beacon Defendants instructed Corthell not to answer.  Counsel for the NIDC Defendants also asked Corthell, "what was your understanding of Beacon Communities' position on NIDC's assertion [that it had the right to interests that formerly belonged to Harold Baldwin and Ivan Blevins]?" [DE 103 at Page ID 1614 (citing Dep. Of M. Corthell, p. 85:20-25, 86:1-11)].  Corthell answered, "My understanding was in relationship with conversations with Paul Bouton and Jamie.  So, they were with counsel." [DE 103 at Page ID 1614 (citing Dep. Of M. Corthell, p. 85:20-25, 86:1-11)].  Counsel for the NIDC Defendants then asked if Beacon Communities "have an official internal position on whether NIDC's claim was valid" at which point counsel for the Beacon Defendants instructed Corthell not to answer, citing attorney client privilege.

The Beacon Defendants argue that "information about why in-house counsel wrote something is properly discoverable via deposition and not discovery requests or depositions of other employees" and points out that they produced Bouton for deposition.  However, the questions at issue do not ask Corthell why Bouton drafted something.  The questions were, (1) "Did somebody explain to you what was being said in this letter?" and (2) "Did [Beacon] have an internal official position on whether

NIDC's claim was valid?"  [DE 103 at Page ID 1614 (citing Dep. Of M. Corthell, p. 85:20-25, 86:1-11)].

These questions do not ask for the content of discussions between an attorney and client.  Both are yes or no questions.  Certainly, there are potential follow-up questions to these questions that could invade the attorney client privilege, though the Court cautions that not every follow-up question will invade the privilege. Questions about a particular employee's personal understanding or actions do not invade the attorney client privilege.  But the Court can only decide the two questions before it on the very limited deposition excerpts.

## IV.   NIDC'S MOTION FOR SANCTIONS

At the very close of its motion, NIDC Defendants implore the Court to sanction the Beacon Defendants.  "Because Beacon's discovery tactics have been so obstructive, apparently intentional, and consistent over two and a half years, NIDC is respectfully asking this Court to use its powers under Federal Rule of Civil Procedure 37(a)(5) to order the Beacon Defendants to reimburse NIDC and Malvern for their legal fees and costs to pursue the discovery disputes described in this motion in an amount to be proven to the Court at a later time."  [DE 103, Page ID# 1620].

To be fair, this case has seen its share of delays and discovery disputes.  And the Court will not disagree that the Beacon Defendants have often been the target of NIDC Defendants' and/or Blevin-Clark's ire.  But the Court cannot yet discern between the Beacon Defendants zealously advocating for their position or inappropriately acting in an obstructive manner; only time will tell.  To date,

however, while the Beacon Defendants' conduct is frustrating to the other parties, it is not sanctionable.

## V.    CONCLUSION

For the reasons set forth above, the NIDC Defendants' motion to compel [DE 103] is **GRANTED IN PART** and **DENIED IN PART** as detailed above.  Blevins-Clark's motion to compel [DE 101] is **GRANTED**.  Within fourteen days from the date of this Memorandum Opinion and Order, the Beacon Defendants **SHALL PRODUCE** a revised privilege log consistent with the guidelines herein.

The undersigned enters this Memorandum Opinion and Order on non-dispositive pretrial matters pursuant to Rule 72(a) and 18 U.S.C. § 636(b)(1)(A).  A party may serve and file objections to this Order, to be considered by the District Judge, within 14 days after being served with a copy.

Entered this 6th of June, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY