UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LAURA BLEVINS-CLARK, ) | |
| ) | |
| Plaintiff, ) | No. 5:22-cv-00281-GFVT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| BEACON COMMUNITIES, LLC, *et al.*, ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon a Partial Motion to Dismiss filed by Defendants NDC Realty Investments LLC ("NDCRI") (the Defendants explain that NDCRI was incorrectly identified in Co-Defendants' Crossclaim as NDC Realty Investments, Inc.), Beacon Communities, LLC ("Beacon Communities"), The Beacon Companies, Inc. ("Beacon Companies"), Keystone Values, LLC ("Keystone"), and NDC Real Estate Management LLC ("NDCREM") (collectively the "Beacon Defendants") seeking to dismiss claims asserted against them by Co-Defendants Malvern Service Corp. ("Malvern") and NIDC Housing Corp. ("NIDC") [R. 78.] For the reasons that follow, the motion will be **DENIED**.

**I**

The Court previously detailed many of the facts involved in this dispute in its prior Memorandum Opinion and Order. [R. 71.] In essence, Plaintiff Laura Blevins-Clark brought suit over her late father's interest, which she contends she inherited or assumed, in a number of partnerships. As part of this action, Malvern and NIDC brought crossclaims against the Beacon Defendants, contending that the Beacon Defendants failed to notify them of the death of Blevins-

Clark's father in a timely fashion, improperly treated Blevins-Clark as a substitute partner following her father's death in violation of the partnership agreements, and improperly withheld partnership funds. [R. 73.] Malvern and NIDC advance a number of legal theories in support of this contention, many of which revolve around their assertion that the Beacon Defendants effectively operate as a single entity, justifying piercing the corporate veil. *Id*. These range from contractual theories – Counts I-X – to claims in the alternative based on a conversion theory – Counts XI-XIII. *Id*.

The Beacon Defendants seek dismissal of Counts I, II, III, IV, VII, VIII, IX and X of Malvern and NDIC's Crossclaim against Beacon Communities, Beacon Companies, and Keystone. [R. 78-1 at 2.] They also seek dismissal of Counts V, VI, XI, XII, and XIII against all of the Beacon Defendants. *Id*. Plaintiff Blevins-Clark takes no position on the motion. [R. 79. Malven and NIDC have responded, [R. 81], to which the Beacon Defendants replied, [R. 85], leaving the matter fully briefed and ripe for review.

## II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id*.

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d

433, 446 (6th Cir. 2000)).  The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).  The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim.  *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).  The Court considers each of Malvern and NIDC's claims in turn.

**A**

The Beacon Defendants contend that a number of Counts should be dismissed against Beacon Communities, Beacon Companies and Keystone (a subset of the Beacon Defendants, hereinafter the "Affiliate Defendants" after the parties' chosen nomenclature) because the Affiliate Defendants are not partners in the relevant partnership agreements and did not therefore owe Malvern or NIDC any contractual, statutory, or common law duty.  [R. 78-1 at 6-7.] Malvern and NIDC's response is simple, and echoes the Plaintiff's: in their view, they state sufficient claims against all Beacon Defendants through a corporate veil piercing theory.  [R. 81 at 3-5.]  It seems to the Court then, that determining whether Malvern and NIDC have sufficiently plead their veil piercing theory answers whether they can proceed on the various contractual counts of their crossclaims.

Under Kentucky law, two elements must be met to pierce the corporate veil: "(1) domination of the corporation resulting in a loss of corporate separateness *and* (2) circumstances under which continued recognition of the corporation would sanction fraud or promote

3

injustice." *Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 469 (Ky. Ct. App. 2012) (emphasis in original) (quoting *Inter-Tel Techs., Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 165 (Ky. 2012)). To assess separateness, courts consider a number of factors, such as:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders.

*Inter-Tel*, 383 S.W.3d at 163-64. Within this list, three factors carry greater weight than the other eight: "grossly inadequate capitalization; egregious failure to observe corporate formalities; and a high degree of control over the corporation's day-to-day operations and decisions." *Tavadia v. Mitchell*, 564 S.W.3d 322, 329 (Ky. Ct. App. 2018). As to the second prong, "the injustice must be some wrong beyond the creditor's mere inability to collect from the corporate debtor," with some examples including: "where a party would be unjustly enriched; where a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities; or an intentional scheme to squirrel assets into a liability-free corporation while heaping liabilities upon an asset-free corporation would be successful." *Inter-Tel*, 383 S.W.3d at 164-65.

In this case, Malvern and NIDC have alleged that "employees of Defendant Beacon Communities and Defendant Beacon Companies regularly acted on behalf of, and represented the interests of, NDCRI, Keystone, and NDCREM" and offer a number of facts to support that assertion. [R. 73 at 14.] These include allegations that Keystone is the sole member of NDCRI, that officers of Keystone frequently communicated on Beacon letterhead and with Beacon

4

emails, and that employees for NDCREM communicated with NIDC while being identified as Beacon employees. *Id*. at 14-15. The Court previously noted that the Crossclaim includes "a basis to hold all of the Beacon Defendants liable because NIDC and Malvern believe that each of the Beacon Defendants acted as a single entity regarding the Partnership Agreements" when granting Malvern and NIDC leave to file a crossclaim, [R. 72 at 6], and it continues to hold that view here. The pleaded facts, if true, at least give rise to a plausible inference satisfying the separateness prong. Discovery may reveal "no misuse of the corporate form" but "such considerations are best left for the summary judgment stage." [R. 71 at 13.][1]

The Court is also satisfied that Malvern and NIDC have pleaded that some injustice would occur absent veil piercing. Here they explain that they seek damages for not just the Plaintiff's putative share currently held in escrow, but also for "assets attributable to former partner Harold Baldwin's share and assets in accounts held and controlled by the Beacon Defendants, not to mention indemnification for a possible judgment." [R. 81 at 5.] This plausible shifting of assets and shares between nebulous entities renders dismissal premature at this juncture.

### B

In Count V of their crossclaim, NIDC asserts a breach of contract by the Beacon Defendants for "improperly denying NIDC's right to the sale proceeds" attributable to Plaintiff's father's shares in the Kentucky Partnerships. [R. 73.] Beyond their more general opposition to

---

[1] In their motion the Beacon Defendants suggest Malvern and NIDC incorrectly alleged that NDCRI was acquired by Keystone with Keystone becoming NDCREM and that the crossclaims are based on the "flawed assertion that NDCREM is the managing general partner of the Kentucky Partnerships when the managing general partner of the Kentucky Partnerships is in fact NDCRI." [R. 78-1 at 3-4.] However, Malvern and NIDC note that this was sourced directly from the Beacon Defendants' prior motion to dismiss. [R. 81 at 6 fn 1;R. 48 at 3.] That the Beacon Defendants are themselves unable to properly articulate their complex corporate shell structure further convinces the court that dismissal before discovery is premature.

Malvern and NIDC's veil piercing theory, the Beacon Defendants seek to dismiss this Count because the actions involved "can never amount to misconduct on the part of the Beacon Defendants" as "it would have been impossible for the Beacon Defendants to cause the Managing General Partner to distribute Plaintiff's putative partnership stake to her, NIDC, or anyone else" on account of this Court's prior order, [R. 15], requiring the disputed funds to be escrowed with the Wyatt law firm. [R. 78-1 at 8.]

Under Kentucky law, proving a breach of contract requires the complainant to establish three things: "1) the existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Taylor v. Univ. of the Cumberlands*, 2018 U.S. Dist. LEXIS 152513 at *12 (E.D. Ky. Sep. 7, 2018) (quoting *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009)). In the Beacon Defendants' view, there cannot have been a breach because "'[t]he law never requires impossibilities,' and the Co-Defendants' theory for breach of contract as stated in Count V of the Co-Defendants' Crossclaim ultimately rests on an impossibility (or the outright defiance of a Court Order)." In response, Malvern and NIDC see this as a mischaracterization of what they seek. [R. 81 at 6-7.] By their reckoning, the real issue is that "the Beacon Defendants have refused to acknowledge NIDC's rightful ownership of Blevin's former shares and all partnership assets that would be attributable to the shares" and Count V is really seeking judicial intervention to enforce NIDC's rights to those shares and assets. *Id*. They further note that the escrow amount is merely an approximation and may not be "one and the same" as the relief sought by Count V. *Id*.

The Court here thinks that NIDC better describes what is at issue. As the Beacon Defendants emphasized in their reply, [R. 85 at 5], this Court's prior order stated that "[a]ny further litigation in this case SHALL center upon the proper disposition of proceeds received by

6

the Defendant Entities in connection with a sale of the Apartment Complexes…" and further provided that "Wyatt, Tarrant & Combs, LLP SHALL NOT disburse any of the escrow funds described in this order absent further order of this Court." [R. 15 at 3.]  Far from seeking an "impossible" violation of this Court's order, Malvern and NIDC's Count V merely seems to throw their hat into the ring for the proper disposition of those proceeds. Certainly, the funds and shares are currently frozen, but it seems plausible that they belong to at least one of the parties to this litigation – be that Plaintiff Blevins-Clark or, as they assert here, NIDC.  And, as Malvern and NIDC note, the escrowed funds may not ultimately be one-to-one with the disputed funds. Put together this all suggests an early dismissal of this count would be inappropriate.

C

In Count VI of their crossclaim, Malvern and NIDC bring a claim for equitable estoppel. They premise this claim on their contention that the Beacon Defendants "intentionally represented to NIDC their agreement, and lack of objection, that NIDC could remove Blevins and Baldwin as partners by sending notice to potential heirs/representatives….and that their former shares in the Kentucky Partnerships would revert to NIDC" before "subsequently deny[ing] NIDC's right to Blevins's and Baldwin's former shares in the Kentucky Partnerships." [R. 73 at 22.]  In essence, they see the Beacon Defendants as previously endorsing Malvern and NIDC's position before reneging and shifting into an, at best, neutral position.  [R. 81 at 7-9.] By contrast, the Beacon Defendants emphasize that they "have never taken action to support Plaintiff," reiterate their view that the Blevins' share is currently escrowed, and state that "there is no law in Kentucky that requires a managing general partner of a partnership 'pick a side' and unilaterally adjudicate disputes between partners, especially disputes of this sort, which have

7

been tendered to a court of competent jurisdiction for adjudication."[2]  [R. 78-1 at 8-9; R. 85 at 6.]

"[E]stoppel is a question of fact to be determined by the circumstances of each case." *Weiand v. Board of Trustees of Kentucky Retirement Systems,* 25 S.W.3d 88, 91–92 (Ky. 2000) (internal citations omitted).  In Kentucky, the essential elements of equitable estoppel are as follows:

> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Kindred Nursing Ctrs. L.P. v. Brown*, 411 S.W.3d 242, 247 (Ky. Ct. App. 2011) (quoting *Weiand*, 25 S.W.3d at 91 (Ky. 2000) (internal citations omitted)). Many of the Beacon Defendants points are well taken, but on these facts the Court is convinced that Malvern and NIDC's claim can, at least at this point, proceed.

As Malvern and NIDC characterize the issue, a plausible explanation for the shift in the Beacon' Defendant's position is that they "falsely stated their former position."  [R. 81 at 9.] Malvern and NIDC's theory thus goes something along the following lines: the Beacon Defendants told Malvern and NIDC that they agreed with and supported Malvern and NIDC's ability to remove Blevins and Balwin, all while knowing that they (the Beacon Defendants )

---

[2] In their Reply the Beacon Defendants helpfully clarify that their motion to dismiss is directed only at Malvern and NIDC's claims for equitable estoppel with regard to the Blevins share and that they do not currently seek dismissal of Malvern and NDIC's equitable estoppel claim as to the Baldwin interest.  [R. 85 at 6 fn 4.]

8

were lying about such support and perhaps even Malvern and NIDC's ability to take that action; in reliance Malvern and NIDC sent out the notifications to the heirs/representatives of Blevins and Baldwin (including Plaintiff); Malvern and NIDC became embroiled in the current litigation as a result; and, finally, the Beacon Defendants have essentially shifted their position (as they always knew they would under this theory) to hang Malvern and NIDC out to dry. This is not about any duty, or lack thereof, the Beacon Defendants have as a managing general partner to "pick a side" or otherwise referee the dispute, but about allegedly false representations they chose to make that may have harmed Malvern and NIDC's position. Nor does Count VI rest on a requirement that the Beacon Defendants ignore this Court's prior order, for similar reasons as discussed in section II.B. Discovery may reveal holes in Malvern and NIDC's theory that are insurmountable, but at this stage dismissal is unwarranted as to Count VI.[3]

**D**

In the alternative, Malvern and NIDC bring multiple conversion claims alleging the Beacon Defendants have retained funds from Baldwin's interest (Count XI), legal bills (Count XII), and final payables, representations and warranties (Count XIII). [R. 73 at 25-26.] The Beacon Defendants now move to dismiss these counts as "there is no such thing as conversion of contractual rights under Kentucky law." [R. 78-1 at 11.] In response, Malvern and NIDC argue that these are merely claims asserted in the alternative, and that while they "cannot doubly recover under the alternative theories… the attempt to dismiss the conversion claims is at least premature." [R. 81 at 10.]

---

[3] The Beacon Defendants' decision to forego making these arguments as to the Baldwin share is telling as it places the emphasis of their argument on their claim that Count VI requires ignoring this Court's order, rather than their argument that any shift in position is either warranted by the Beacon Defendants or misstated by Malvern and NIDC. Otherwise, dismissal of Count VI as to the Baldwin share would be (almost) equally as justified as dismissal of Count VI as to the Blevins share.

Under Kentucky law, a conversion claim has seven elements:

(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Kentucky Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 632 n. 12 (Ky. 2005) (quoting 90 C.J.S. Trover and Conversion § 4 (2004)). However, the core dispute here is not those elements but whether Malvern and NIDC can plead both breach of contract and conversion claims as to largely the same funds.

Courts have found conversion claims to be mutually exclusive to breach of contract claims when "the property right alleged to have been converted arises entirely from the contractual rights to compensation." *Davis v. Siemens Med. Solutions*, *USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005); *Francis v. Nami Res. Co., LLC*, 2008 WL 852047, at *14 (E.D. Ky. Mar. 28, 2008) (same, citing *Davis*); *Pioneer Resources Corp. v. Nami Resources Company*, 2006 WL 1778318, at *12 (E.D. Ky. June 26, 2006) (same, citing *Davis*). The Court is not convinced, however, that such cases are directly applicable at this stage of the proceedings. Each dealt with summary judgment motions, after the facts in those cases were developed, and not motions to dismiss. Indeed, *Davis* itself (the pattern case for this issue or so it would seem) acknowledged that "[a] conversion claim and contract claims are not always incompatible." *Davis*, 399 F. Supp. 2d at 801.

Instead, the Court looks to Federal Rule of Civil Procedure 8(d)(2)-(3) which provide that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically,

10

either in a single count or defense or in separate ones" and that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  And, pursuant to Rule 8, courts frequently permit parties to plead claims that may ultimately end up being mutually exclusive. *Game Sci., Inc. v. Gamestation, Inc.*, 2014 WL 12726643 (W.D. Ky. Oct. 21, 2014), *report and recommendation adopted*, 2014 WL 12726642 (W.D. Ky. Nov. 13, 2014) (permitting party to plead both conversion and breach of contract claims); *DNA Health, LLC (NJ) v. Liv Health LLC*, 2024 WL 1336437 (E.D. Ky. Mar. 28, 2024) (permitting party to plead mutually exclusive breach of contract and unjust enrichment theories); *D.R.E. Med. Grp., Inc. v. NorVap Int'l, Ltd.*, 2022 WL 2345923 (W.D. Ky. June 29, 2022) (same as *DNA Health*); *Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900 (W.D. Ky. 2018) (same as *DNA Health* and collecting cases). Indeed FRCP 8(d)(3), permitting inconsistent claims, would seem to have little effect if not applicable in scenarios such as this.

The alleged contractual rights at issue here are complicated, involving an alphabet soup of interlocking entities, and Malvern and NIDC's contractual claims are predicated on a veil piercing theory of liability.  It seems plausible then that even if veil piercing is inappropriate and no contractual rights flow from a specific entity to Malvern and NIDC, nevertheless that entity may have ended up with funds that Malvern and NIDC were otherwise entitled to. [*See* R. 81 ("If the Court were to find that Malvern and NIDC do not have contractual rights to those assets, the conversion claims would not seek to enforce contractual rights…the Court could find independent, alternative bases for rights to those assets, such as in the Kentucky Limited Partnership Act.")]  With the summary judgment cases cited by the Beacon Defendants inapposite to the situation at hand, at this point the Beacon Defendants' attempt to dismiss these inconsistent and alternative theories is premature.

11

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Beacon Defendants' Motion to Dismiss **[R. 78]** is **DENIED**.

This the 16th day of June 2025.

Gregory F. Van Tatenhove
United States District Judge