UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| LAURA BLEVINS-CLARK, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 5:22-CV-00281-GFVT-MAS |
| | ) | |
| BEACON COMMUNITIES, LLC, *et al.*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Unfortunately for the Court and parties, this litigation has reached another impasse due to another discovery dispute. Since the start of discovery in February 2023, the Court has navigated multiple discovery disputes [DE 42, 57, 68, 92, 95, 98, 124] as well as authored two, lengthy discovery opinions [DE 114, 115]. In fact, many of the issues the Court resolved in those two prior opinions are back again in the current motion practice. And at nearly every turn, the Beacon Defendants[1] have sought to hinder and retard discovery. [DE 115, Page ID# 2012 ("To be fair, this case has seen its share of delays and discovery disputes. And the Court will not disagree

---

[1] Defendants Beacon Communities LLC ("Beacon Communities"), The Beacon Companies, Inc. ("Beacon Companies"), Keystone Values LLC ("Keystone"), NDC Realty Investments LLC ("NDCRI"), and NDC Real Estate Management LLC ("NDCREM") are collectively defined as the "Beacon Defendants."

that the Beacon Defendants have often been the target of NIDC Defendants' and/or Blevin-Clark's ire.")].

The Court is once more faced with a litany of discovery disputes where Plaintiff Laura Blevins-Clark and the NIDC Defendants[2] are seeking to compel discovery from the Beacon Defendants.  First, the Beacon Defendants have objected to nearly all the topics raised by Blevins-Clark and the NIDC Defendants in their corporate deposition notices of the Beacon Defendants.  Second, the NIDC Defendants seek to again compel various discovery responses from the Beacon Defendants.  Third, Blevins-Clark and the NIDC Defendants continue to express frustration at the iterative, opaque privilege log of the Beacon Defendants.  Blevins-Clark has moved for *in camera* review of seven documents and for the Court to compel production of 75 others, while NIDC requests a full *in camera* review of all 658 line-items on the privilege log.

The Court will address each of these issues, in turn, below.[3]

## I.   FACTUAL BACKGROUND

The Court has generally described the factual background of this dispute in prior opinions by the undersigned [DE 114, 115] as well as those authored by Judge Van Tatenhove [DE 71, 116].

---

[2] Defendants NIDC Housing Corp. and Malvern Service Corp. are collectively defined as the "NIDC Defendants."

[3] And last, not to be left out, the Beacon Defendants seek to compel discovery from the NIDC Defendants, which the Court addresses in a separate Memorandum Opinion and Order.

At its simplest, the dispute is between various parties contesting over the real estate holdings of Ivan Blevins and Harold Baldwin, two partners who owned and operated several large apartment complexes in Kentucky. The parties before the Court today represent a daughter of one, Plaintiff Laura Blevins-Clark, and the corporate successors of their various partnerships, the Beacon Defendants and the NIDC Defendants. All parties believe they are due some portion of the proceeds from the partnerships and the remaining assets and proceeds. The various partnership agreements govern the dispute and frame the core of the discovery in this case. Both Blevins-Clark and the NIDC Defendants have also asserted claims of alter ego against the Beacon Defendants seeking to pierce the corporate veil of the various entities, theories the Court has permitted to go forward in discovery. [DE 71, 116].

Additional details and backgrounds of the various discovery disputes are set forth in the prior opinions of the Court.

## II. ANALYSIS

### A. CORPORATE DEPOSITIONS OF THE BEACON DEFENDANTS

Under FED. R. CIV. P. 30(b)(6), a party may depose a corporate entity by providing a list of topics by which the corporate can produce a witness knowledge of the cited topic. A Rule 30(b)(6) notice "must describe with reasonable particularity the matters for examination," and the deponent "must testify about information known or reasonably available to the organization." *Id*. A Rule 30(b)(6) witness differs from a "mere corporate employee" because, unlike an individual witness, the testimony of a Rule 30(b)(6) witness represents the knowledge of the corporation and testimony under the rule binds the corporation. *White v. Wal-Mart Stores E., L.P.*,

No. 5:18-CV-00034-TBR-LLK, 2018 WL 5083891, at *3 (W.D. Ky. Oct. 18, 2018); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares Inc.*, No. 2:15-CV-3023, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018). Outside of these parameters, the normal rules of any fact deposition apply, such as the testimony must be "relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).

The issue of the corporate depositions of the Beacon Defendants is one of the issues the Court has addressed repeatedly. Previously, the Beacon Defendants refused any notion of corporate depositions because the Beacon Defendants argued that the claim against them (an alter ego theory by both Blevins-Clark and the NIDC Defendants) was without merit. The Court denied the Beacon Defendants' legal attack on those claims [DE 71, 116] and rejected their argument that any discovery on those claims was impermissible [DE 114]. Now, the Beacon Defendants have objected to nearly every topic noticed by both Blevins-Clark and the NIDC Defendants further slowing discovery efforts.

### 1. **Piercing the Corporate Veil**

Before turning to the challenged topics, the Court must first frame the theory of alter ego or veil piercing to better inform the discussion of what topics are relevant to the parties' claim.

> Piercing the corporate veil is an equitable doctrine invoked by courts to allow a creditor recourse against the shareholders of a corporation. In short, the limited liability which is the hallmark of a corporation is disregarded and the debt of the pierced entity becomes enforceable against those who have exercised dominion over the corporation to the point that it has no real separate existence. A successful veil-piercing claim requires both this element of domination and circumstances in which continued recognition of the corporation as a separate entity would sanction a fraud or promote injustice.

*Inter–Tel Technologies, Inc. v. Linn Station Props., LLC*, 360 S.W.3d 152, 155 (Ky. 2012). Thus, to pierce a corporate veil a court must find two separate elements: "(1) domination of the corporation resulting in a loss of corporate separateness and (2) circumstances under which continued recognition of the corporation would sanction fraud or promote injustice." *Id.* at 165. In deciding whether to pierce a corporate veil, the Kentucky Supreme Court assembled two lists of factors that should be considered by courts when assessing corporate separateness:

(1) inadequate capitalization;

(2) failure to issue stock;

(3) failure to observe corporate formalities;

(4) nonpayment of dividends;

(5) insolvency of the debtor corporation;

(6) nonfunctioning of the other officers or directors;

(7) absence of corporate records;

(8) commingling of funds;

(9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors;

(10) failure to maintain arm's-length relationships among related entities; and

(11) whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders.

a) Does the parent own all or most of the stock of the subsidiary?

b) Do the parent and subsidiary corporations have common directors or officers?

c) Does the parent corporation finance the subsidiary?

d) Did the parent corporation subscribe to all of the capital stock of the subsidiary or otherwise cause its incorporation?

e) Does the subsidiary have grossly inadequate capital?

f) Does the parent pay the salaries and other expenses or losses of the subsidiary?

g) Does the subsidiary do no business except with the parent or does the subsidiary have no assets except those conveyed to it by the parent?

h) Is the subsidiary described by the parent (in papers or statements) as a department or division of the parent or is the business or financial responsibility of the subsidiary referred to as the parent corporation's own?

i) Does the parent use the property of the subsidiary as its own?

j) Do the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest?

k) Are the formal legal requirements of the subsidiary not observed?

*Id*. at 163–64. The Kentucky Supreme Court emphasized the most critical factors were "grossly inadequate capitalization, egregious failure to observe legal formalities and disregard of distinctions between parent and subsidiary, and a high degree of control by the parent over the subsidiary's operations and decisions, particularly those of a day-to-day nature." *Id*. at 164.

With this legal scaffolding established, the Court turns to the dispute between the parties as what corporate deposition topics are permissible.

2.    **Blevins-Clark's Notice**[4]

The Beacon Defendants grouped the topics by type of objection.  The Court will follow their lead.

        *a.*    *Topics 4 & 5*

Topic 4: Please identify all states in the United States in which [Beacon Defendants] is registered and/or licensed to do business by the secretary of state (or similar state-level governmental entity).

Topic 5: For each state listed in the answer to question #4 above, please identify the registered agent, principal business office, members, and officers that [Beacon Defendants] has listed on any application, registration, or annual reporting documents filed with each state.

The Beacon Defendants complain that Topics 4 & 5 are overly broad and burdensome as it requires the Beacon Defendants to "compile a 50-state survey" for responsive information.  [DE 140, Page ID# 3477].  The Beacon Defendants are grossly misreading the request.  The Beacon Defendants do not need to conduct a 50-state survey.  The Beacon Defendants merely need to provide information they plainly possess—where each entity is registered and organized.  The Beacon Defendants already know the answer; there is no burden of searching for information it already knows.

Nor are the topics overly broad.  As this Court has previously explained, "a Rule 30(b)(6) notice 'must describe with reasonable particularity the matters for examination,' and the deponent 'must testify about information known or reasonably

---

[4] Blevins-Clark served identical corporate deposition notices on all five of the Beacon Defendants.  Thus, when the Court discusses the noticed topics or makes a holding as to those topics, those discussions and holdings apply to the corporate depositions of all five entities by Blevins-Clark.

available to the organization.' 'The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not.'" *Woods v. Std. Fire Ins. Co.*, 589 F. Supp. 3d 675, 684 (E.D. Ky. 2022) (internal citations omitted).  Topics 4 & 5 are limited and targeted asking the Beacon Defendants to identify the registered agent(s), principal office, members, and officers. The topics are so targeted that the Beacon Defendants could exhaustively include all responsive information on a single page.  The Court could not perceive, nor do the Beacon Defendants suggest, how to narrow these topics further.

Lastly, the Beacon Defendants argue the requests are irrelevant.  [DE 140, Page ID# 3476].  The topics seek information about the Beacon Defendants governance and corporate structure.  Turning back to the factors established in *Inter-tel*, the topic is responsive to several factors, including "failure to maintain arm's-length relationships among related entities," "whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders," "[d]oes the parent own all or most of the stock of the subsidiary," "[d]o the parent and subsidiary corporations have common directors or officers," and "[d]o the directors or executives fail to act independently in the interest of the subsidiary, and do they instead take orders from the parent, and act in the parent's interest." *Inter–Tel Technologies, Inc.,* 360 S.W.3d at 163-64.  The objection is overruled, and the Beacon Defendants must produce a representative on these topics.

      *b.*    <u>*Topics 8, 9, 15 & 27*</u>

<u>Topic 8</u>: Does [Beacon Defendants] have any employees, officers, or managers in common with any of the other companies identified in the

definitions section above?  If so, please identify those individuals, and state their job titles with each entity.

Topic 9: Please state the total number of persons employed by [Beacon Defendants].

Topic 15: Please state whether Mount Ebal, LLC, is an owner, member, manager, or shareholder of [Beacon Defendant]? (*sic*) If so, please explain Mount Ebal's function and role in ownership, management, and day to day operations of [Beacon Defendants].

Topic 27: Does [Beacon Defendants] pay the salaries of the employees of any other entity listed in the definitions section above? If so, please identify which companies and which employees it pays the salaries of, and please state the amount of each salary paid.

As described by the Beacon Defendants, Blevins-Clark "seeks any employees in common between the Beacon Defendants, the total number of people employed by each Beacon Defendant and whether Mount Ebal, LLC is affiliated with each Beacon Defendant."  [DE 140, Page ID# 3478].  To this, the Beacon Defendants have raised objections.

First, the Beacon Defendants argue that Topics 8, 9, and 27 lack any temporal limitation.  The Court agrees.  The Beacon Defendants, however, do not argue or suggest a proper time frame for the information.  The Court, far from the factual expert in this case, can merely surmise that these topics should be limited to the period following Beacon Communities, LLC's purchase in 2017.  [*See* DE 134, Page ID# ("The depositions of numerous witnesses in this case have repeatedly confirmed that NDCRI is a hollow shell company with no assets and no employees.  It's only purpose since being acquired by Beacon in 2017 is to serve as a pass-through entity to facilitate administrative tasks such as filing corporate tax returns on behalf of the partnerships and effectuating the legal paperwork required to sell the properties.")].

Next, the Beacon Defendants contend Topic 27 not only requests whether the Beacon Defendants pay for the salaries for employees of other entities, but also their salaries. Again, the Court agrees. While listing whether employees between the entities overlap or whether the entities are paying salaries of employees of other entities is certainly relevant, their salary amount is not. The Court understands that salary information may be generally relevant to the moving of funds between the entities, but detailing specific salaries tied to specific employees is a bridge too far.

The Beacon Defendants challenge Topic 15 and its inclusion of Mount Ebal, LLC, a company that is not a listed party in the case but appears to be the sole manager of Beacon Communities, LLC. Thus, under any commingling theory and just providing an understanding the corporate structure of the Beacon Defendants, the Court also finds this topic relevant.

Beacon Defendants' objections are sustained in part and overruled in part as stated above.

c.      *Topics 11 & 25*

Topic 11: Please state the amount of the book income and taxable income claimed by [Beacon Defendants] on [their] federal tax returns for tax years 2021, 2022, and 2023. If there is a difference between these numbers in any of the aforementioned tax years, please explain the reason for the difference.

Topic 25: Please identify the bank where [Beacon Defendants] keep[] its primary business operating account, and please state the amount of money in the account as of the date of the deposition.

The Beacon Defendants argue that Topics 11 & 25 are overly broad because they seek targeted information from all the Beacon Defendants as opposed to just NDCRI, the managing general partner of the partnerships. Per the Beacon

Defendants, "NDCRI agreed to provide the information sought under both topics, which appear to be aimed at whether NDCRI has maintained adequate capitalization – one of the *Inter-tel* factors." [DE 140, Page ID# 3479].

The problem with this argument is that Blevins-Clark has asserted theories of piercing the corporate veil against **all** the Beacon Defendants, not just NDCRI. As Blevins-Clark has repeatedly described its allegation, "Beacon Defendants, including NDCRI, are part of a complex web of interrelated and interconnected companies whose ownership and provenance are difficult to discern." [DE 134, Page ID# 2294]. The issue is not just the capitalization of NDCRI, but the capitalization of all the Beacon Defendants. For this reason, the Court will permit Topics 11 and 25 to proceed as stated; the Beacon Defendants objections are overruled.

### d. *Topics 16 & 20*

Topic 16: Please state whether any employee, officer, manager, or member of [Beacon Defendants] communicated with any representative of the Amity Companies, LLC, concerning the sale of the Enterprise. If so, please identify all such persons, and summarize their communications with Amity on this topic.

Topic 20: Please state whether any employee, officer, manager, or member of [Beacon Defendants] communicated with Max Perry concerning the claim that Laura Blevins-Clark failed to properly substitute herself into the partnership agreements constituting the Enterprise following her father's death. If so, please identify all such persons, and summarize their communications with Mr. Perry, as well as the dates of all such communications.

With Topics 16 & 20, the Beacon Defendants believe they have provided responsive information in document production and that other responsive information does not exist. The Court is aware of these prior disputes and does not

disagree with the Beacon Defendants' statements. These arguments, however, miss the purpose of the notice.

The purpose of the Rule 30(b)(6) deposition is to answer questions about these productions, whether in the affirmative or negative, as to "bind the entity that they are representing." *Penman v. Correct Care Solutions, LLC*, No. 5:18-cv-58-TBR-LLK, 2021 WL 3134255, at *3 (W.D. Ky. July 23, 2021). The representative for the Beacon Defendants does not need to produce documents or summarize information in advance of the deposition. Rather, the deponent needs to come prepared to answer questions about documents for which that entity has responsive knowledge, if any.

The Court will grant Blevins-Clark's motion to compel a witness on these topics and deny the objections of the Beacon Defendants.

  e. *Topics 17, 18, and 19*

Topic 17: Please state whether any employee, officer, manager, or member of [Beacon Defendant] communicated with Laura Blevins-Clark at any time after February 16, 2020? If so, please identify all such persons, and summarize their communications with Ms. Blevins-Clark, as well as the dates of all such communications.

Topic 18: Please state whether any employee, officer, manger, or member of [Beacon Defendants] communicated with Laura Blevins-Clark concerning her duties under the partnership agreements constituting the Enterprise to provide formal notification of her father's death? If so, please identify all such persons, and summarize their communications with Ms. Blevins-Clark, as well as the dates of all such communications.

Topic 19: Please state whether any employee, officer, manager, or member of [Beacon Defendants] communicated with Laura Blevins-Clark concerning the claim that she failed to properly substitute herself into the partnership agreements constituting the Enterprise following her father's death? If so, please identify all such persons and summarize their communications with Ms. Blevins-Clark, as well as the dates of all such communications.

The Beacon Defendants object to the above topics because they seek the identification and summary of any communications between the Beacon Defendants and Blevins-Clark.  The Beacon Defendants have a fair point that the topics are oddly worded to the extent the topics ask a corporate entity to identify individuals who communicated with Blevins-Clark and summarize those conversations.  Rather, the proper topic is simply for the Beacon Defendants to produce a corporate representative who could testify about any and all communications the relevant entity had with Blevins-Clark as described in the specific topic.  Regardless of the awkward framing, the Beacon Defendants are on clear notice that they must produce a representative who can testify about communications by the Beacon Defendants with Blevins-Clark about the identified subjects.

As for temporal limitations, the topics do provide such limitations.  For Topic 17, the communications are only those after February 16, 2020.  For Topics 18 & 19, the communications are limited to the time following her father's death, a well-established and critical date in the litigation.  Despite the Beacon Defendants concerns, the temporal limitations are present and reasonable.

    f.    *Topics 21, 23, and 29*

Topic 21: Please state who owns [each Beacon Defendant]?  If more than one person or entity owns Beacon, then please list all owners by percentage of ownership.

Topic 23: Did [Beacon Defendants] cause any of the other entities listed in the definitions section above to be incorporated, formed, registered with the secretary of state of any state, or otherwise created?  If so, please state which entities were so created, and the date this occurred.

Topic 29: Is any other entity listed in the definitions section above described in any paperwork or filings that [Beacon Defendant] has filed

with any local, state, or federal governmental entity as a subsidiary, department, or subdivision of [Beacon Defendants]? If so, please identify which entities have been described in this manner and state with particularity the relevant filing which utilize these descriptions.

The Beacon Defendants argue that these topics, like prior topics, are overly broad and irrelevant to the litigation. The Court disagrees. Like with Topics 4 & 5, the Beacon Defendants are tasked with providing a representative to discuss their corporate structure and how those structures relate, if at all, with the corporate structure of other Beacon Defendants. As already described above, those topics are particular and relevant to the factors of piercing the corporate veil.

> ### g.    *Topics 22, 24, and 26.*

Topic 22: Please state whether [Beacon Defendants have] ever provided funding, financing, overhead costs, or any other funds intended to pay for the operations of any other entity listed in the definitions section above. If so, please state the dates and amounts of all such payments.

Topic 24: Please state the amount of the total assets owned by [Beacon Defendants]. Please itemize and categorize those assets by cash on hand, real property, investments in other companies, stock, etc.

Topic 26: [Have Beacon Defendants] ever paid for the debt or liabilities listed in the definitions section above? If so, please identify which entity, and the amount, date, and purposes of the payment.

The Beacon Defendants begin their attack on these topics by complaining about the lack of temporal limitations. [DE 140, Page ID# 3483]. The Court has already found this complaint fair and determined that, at minimum, such topics should be limited to the post-purchase period.

The remaining attack on these topics concerns whether they are overly burdensome. [DE 140, Page ID# 3483]. The Beacon Defendants implicitly and correctly conclude that these topics (requesting information about the capitalization

of these entities) are relevant.  The capitalization and solvency issues are one of the most important factors under the *Inter-tel* analysis.  Without question, such reviews are burdensome.  However, the natural limitations are set by the documents produced in the case.  The representative for the Beacon Defendants will need to be knowledgeable about the general assets of the various entities and responsive to any documents produced in the case.  However, the representative does not need, as the Beacon Defendants suggest, to conduct "an extensive review and disclosure of financial information – a review that could take several months, if not longer, to compile."  [DE 140, Page ID# 3483].  "A Rule 30(b)(6) witness is obligated to become educated to the extent possible about the identified topics, although perfection is not expected."  *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (S.D. Mich. 2019) (citing *White v. Wal-Mart Stores E., L.P.*, No. 5:18-CV-00034-TBR-LLK, 2018 WL 5083891, at *3 (W.D. Ky. Oct. 18, 2018)).

The argument that preparing a Rule 30(b)(6) deponent is burdensome is far from original.  For example, Papa John's, in its litigation with its founder John Schnatter, made the same argument citing the burden of preparing and producing representatives.  *Schnatter v. 247 Group, LLC*, 343 F.R.D. 325 (W.D. Ky. 2022).  The Court rejected the argument.  "Rule 30(b)(6) is designed to prevent this exact issue and offers a path to reduce the number of depositions sought by a party such as Defendants that is uncertain of who in the organization has knowledge.  This argument does not have merit as a single adequately prepared Rule 30(b)(6) would

seemingly obviate Defendants' need for the additional depositions." *Id.* at 334. The same rationale applies here to the Beacon Defendants.

        *h.*    <u>*Topic 28*</u>

> <u>Topic 28</u>: [Do Beacon Defendants] do business with any persons or entities besides those listed in the definitions section above? If so, please summarize all other business operations conducted by Beacon which are separate and apart from the business it does with the entities listed in the definitions section above.

Like with other topics, the Beacon Defendants argue that Topic 28 lacks temporal limitations. The Court agrees and has provided direction on that issue.

The other concern from the Beacon Defendants is the overbreadth of Topic 28. The Beacon Defendants concede the topic is relevant, but the scope is so broad that nearly any and every activity by the Beacon Defendants could be responsive. The relevant factors under *Inter-tel* are the commingling of funds, failure to maintain arm's-length relationships among related entities, whether the corporation is a mere facade for the operation of the dominant corporation, etc. To answer these questions, Blevins-Clark does not need to know every single person or entity with which the Beacon Defendants conduct business. For example, whom the Beacon Defendants hire to provide janitorial services or paper shredding services at their respective offices is probably not determinative. The Court will modify Topic 28 to require the Beacon Defendants to summarize all other substantial business operations conducted by the Beacon Defendants which are separate and apart from the business it does with the entities lists in the definition section. By including the word substantial, the Court intends to target the inquiry and greatly reduce the burden on the Beacon Defendants.

i.    *Topics 30, 31, 32, & 33*

Topics 30-32: These items ask whether (30) the noticed Beacon Defendant owns a building (or portion thereof) at Two Center Plaza, Suite 700, Boston, Massachusetts, and a list of all companies/occupants/tenants operating at that location; (31) whether the noticed Beacon Defendant pays rent for its principal business location, to whom, and in what amount; and (32) whether the noticed Beacon Defendant owns office equipment and whether any other entity uses such equipment.

Topic 33: [Do Beacon Defendants] hold shareholder or owner meetings? If so, how frequent are those meetings and who is in attendance?

Topic 30 is relevant to the capitalization of the Beacon Defendants as all purport to function in the real estate business. However, the Court will concede that listing every occupant at all locations is somewhat unnecessary. Rather, the Beacon Defendants can answer questions about the number of units available at each location, the number of occupied units at each location. To the extent the topic merely seeks the entities occupying a single suite in the building, Suite 700, surely the Beacon Defendants can respond to questions about the tenant(s) and their arrangements in a single suite.

Topics 31 and 32 identify specific questions of whether the Beacon Defendants pay rent for their principal places of business and whether the Beacon Defendants own office equipment at those principal places of business. A simple answer to these questions would directly go to several *Inter-tel* factors, including the commingling of funds, whether the Beacon Defendant is a mere facade for another Beacon Defendant, whether one Beacon Defendant pays the expenses of another Beacon Defendant, and whether one Beacon Defendant uses the property of another Beacon Defendant.

Topic 33 is plainly relevant and applicable under the *Inter-tel* factor as to, among others, whether a company maintains corporate formalities. Moreover, requiring a corporate representative to simply identify who frequently those meetings occur and who is in attendance is far from burdensome. The Beacon Defendants' arguments on this point are far from meritorious.

**3.   NIDC Defendants' Notice**

NIDC Defendants have also filed a Rule 30(b)(6) seeking the deposition of the Beacon Defendants. And like with Blevins-Clark, the Beacon Defendants have objected to nearly ever topic. The Court will again seek to group the topics as the parties have done.

a.   *Topics 1-4*

Topic 1: The Beacon Defendants' knowledge of the deaths of Ivan Blevins and Harold Baldwin.

Topic 2: The Beacon Defendants' sending of K-1 tax forms for the Kentucky Partnerships1 to: Estate of Ivan G. Blevins; Ivan Blevins Associates Inc.; and Laura Blevins-Clark.

Topic 3: Notification by the Beacon Defendants to any of the following that K-1 tax forms and/or partnership distributions were sent to the Estate of Ivan G. Blevins, Ivan Blevins Associates Inc., or Laura Blevin-Clark in relation to the Kentucky Partnerships: K&B Partners Limited 1978-V; K&B Housing Investors 1979-I; K&B Housing Investors 1979-III; Kaufman and Broad Housing Corp.; NIDC Housing Investors 1979-I; NIDC Housing Investors 1979-III; NIDC Housing Corp.; or Malvern Service Corp.

Topic 4: Notification of the deaths of Ivan Blevins and Harold Baldwin by the Beacon Defendants to: K&B Partners Limited 1978-V; K&B Housing Investors 1979-I; K&B Housing Investors 1979-III; Kaufman and Broad Housing Corp.; NIDC Housing Investors 1979-I; NIDC Housing Investors 1979-III; NIDC Housing Corp.; or Malvern Service Corp.

Topics 1-4 generally concern the Beacon Defendants' knowledge about the deaths of the two principals and certain tax filings. [DE 137-3, Page ID# 3225]. The Beacon Defendants have objected to producing any information that pre-dates 2017 as such information is not in their possession, custody, or control considering the Beacon Defendants did not acquire an interest in the partnerships until 2017. To the extent that the Beacon Defendants do not have any knowledge on events or documents that occurred before 2017, they are free to say so at the corporate deposition. However, the Court will not presume that when the Beacon Defendants acquired an interest in the partnership, they simply never reviewed a single business record, inherited such records, or garnered any information about the activities of the partnerships prior to the acquisition date. In fact, basic due diligence and corporate management would suggest the Beacon Defendants would indeed possess *some* knowledge about activities pre-dating their acquisition. In short, to the extent the Beacon Defendants do not have knowledge about pre-acquisition activities, they must produce a representative that can bind the corporation to that representation; to the extent the Beacon Defendants have knowledge about pre-acquisition activities, they must produce a representative that can answer questions about that knowledge.

    b.    *Topics 5-8, 10, and 11*

Topic 5: Beacon's understanding of the requirements of the written partnership agreements of the Kentucky Partnerships to admit a successor partner to the Kentucky Partnerships.

Topic 6: Beacon's understanding of the investor limited partner's rights upon the death of a general partner, pursuant to the written partnership agreements of the Kentucky Partnerships.

<u>Topic 7</u>: Beacon's past and current positions or opinions on NIDC's claim to the interests in the Kentucky Partnerships formerly belonging to Ivan Blevins and Harold Baldwin.

<u>Topic 8</u>: NIDC's notice to potential heirs and representatives of Ivan Blevins and Harold Baldwin regarding NIDC's claim to the interests in the Kentucky Partnerships formerly belonging to Ivan Blevins and Harold Baldwin, as reflected in documents produced in discovery under Bates Stamp NIDC_000300-307, 000320-323, 000328-331, and Beacon's past and current positions or opinions on that notice.

<u>Topic 10</u>: Beacon's understanding of the requirements of the written partnership agreements of Albany Manor Associates to admit a successor partner to Albany Manor Associates.

<u>Topic 11</u>: Beacon's understanding of the investor limited partner's rights upon the death of a general partner, pursuant to the written partnership agreements of Albany Manor Associates.

The above topics all ask for Beacon's understanding of various partnership agreements to which they are a party. Beacon objects that it is "not required to opine about the legal interpretation of the written agreements." [DE 137-4, Page ID# 3236]. NIDC Defendants counter that they are not asking for the Beacon Defendants' legal interpretation of the documents but simply their understanding.

There is no dispute that any line of questioning that asks a party to describe their understanding of legal documents draws close to the line of invading the attorney-client privilege. "But because the privilege operates to reduce the amount of information discoverable during the course of a lawsuit, it is narrowly construed." *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). "[I]n general, as [NIDC] Defendants argue, '[t]he intent of a party to a contract in entering into it, and his understanding of the contract, is relevant to the general question of interpretation.'" *Johnston v. Dow Employees' Pension Plan*, No. 14-CV-10427, 2016

WL 1106889, at *4 (E.D. Mich. Mar. 22, 2016) (quoting *Jefferson Const. Co. v. United States*, 151 Ct. Cl. 75, 86 (1960)) (citing other cases in support). "The privilege does not shield a contracting party from testifying to his or her understanding of the effect of a contractual term, even if the contract was entered into with and through the advice of counsel." *Id.* at *5.

Regardless, the Beacon Defendants are not raising the attorney client privilege as the basis of their objections. [DE 137-4, Page ID# 3237-38]. Rather, the Beacon Defendants focus on the simple argument of relevancy focused on the value of a witness providing a legal conclusion. However, there is a stark difference between a witness being asked for their legal conclusion as opposed to their general understanding of a contract as a party to the contract. The former is impermissible while the latter is relevant to the parties understanding of their own agreement. At its core, the Beacon Defendants are asking the Court to preclude discovery because "[a] party's understanding of a contractual term is **oftentimes** irrelevant **if** it remains entirely subjective and uncommunicated at the time of contract formation." [DE 141, Page ID# 3500 (citing *Johnston*, 2016 WL 1106889, at *4 (E.D. Mich. Mar. 22, 2016) (citing *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 619 F. Supp. 493, 506 (S.D. N.Y. 1985) (emphasis added)]. This is a qualitative determination in which the Court declines to engage. Simply because some evidence **_may_** be irrelevant **_if_** certain facts bear out in the ultimate analysis does not mean it is not discoverable. The court in *Johnston* reached the same conclusion.

> Johnston's understanding of the waiver he entered into may be relevant
> to resolving a potential dispute over the meaning of the waiver. It also

> may not be.  But that is not a reason for restricting discovery.  The possibility that his testimony may be relevant is sufficient to render it discoverable.

*Id.*  Parties produce huge volumes of discovery that, in the end, have negligible value in resolving the ultimate issue in the case.  But discovery, at this stage, is merely cabined by, *inter alia*, information that relates to the claims and defenses of the parties per Rule 26.  Here, the parties heavily dispute how to handle various provisions on the partnership agreements and have taken steps sometimes inconsistent with their own interpretation.  For example, the NIDC Defendants will surely endeavor to understand the Beacon Defendants' basis to interpret a provision with the Albany Manor partnership one way while interpreting the same provision differently in this case.  Regardless whether the Beacon Defendants drafted the agreements, they are a party to the agreements and are taking steps to effectuate the agreements.  The NIDC Defendants can discover and attempt to understand the basis for those steps and the rationale behind those steps.

The Beacon Defendants cite to *Cincinnati Ins. Co. v. Crossmann Communities Partnership*, No. 5:05-cv-470-KSF, 2010 WL 181726, at *6 (E.D. Ky. Jan. 12, 2010) for the proposition that "any statements of the corporate representative regarding the meaning of the contract terms 'property damage' or 'occurrence' is irrelevant and inadmissible."  Although the quote is accurate, the Beacon Defendants ignored its context.  In that case, Judge Forrester concluded that the corporate representative's understanding of the contract provision ran contrary to the plain meaning of the terms under state law.  Thus, the corporate representative's understanding was meaningless. The Beacon Defendant ignore that the court often cited to the responses

the corporate representative gave at the deposition as to the understanding of the agreement. Thus, by implication, the questions were permissible in discovery per this case.

The Beacon Defendants' objections are overruled.

      c.    *Topics 9, 12, and 13*

Topic 9: The transfer of interests in Albany Manor Associates, which formerly belonged to Ivan Blevins and Harold Baldwin, to First Capital Housing Partners XXVII, including but not limited to the circumstances and communications that led to that transfer, the individuals involved, and the partnership agreement amendment that reflected that transfer.

Topic 12: Any holdbacks reserved by Beacon from the sale of the property formerly belonging to Albany Manor Associates, the decisions by Beacon to reserve or not reserve those amounts, and the identities of the Beacon employees involved in those decisions.

Topic 13: Any attempt by Beacon to seek indemnification from First Capital Housing Partners XXVII, First Capital Corporation, or their affiliates for potential claims related to the interests formerly belonging to Ivan Blevins and Harold Baldwin.

The Court has previously ruled that the Beacon Defendants' action concerning the Albany Manor Partnership is relevant to this dispute to the extent the Beacon Defendants' actions here are contrary or consistent with the Beacon Defendants' position with Albany Manor. [DE 115, Page ID# 2004]. The Beacon Defendants have a fair complaint that the term "circumstances" in Topic 9 seems to open a much broader discussion than that framed previously by the Court. To the extent the NIDC Defendants seek discovery beyond the Court's framework described above, the Beacon Defendants objection is sustained.

d.    *Topic 14*

Topic 14: Beacon's payment of its legal fees in this litigation, the decisions by Beacon to use partnership funds to pay those fees, and the identities of the Beacon employees involved in those decisions.

Topic 14 seeks information about the Beacon Defendants' use of partnership funds to pay for legal fees in this action. Per the Beacon Defendants, the companies have already produced financial records detailing the responsive information. [DE 141, Page ID# 3502]. The NIDC Defendants now seek testimony from a corporate representative about those productions. By the Beacon Defendants' own admission, the issue is relevant. Rather, the Beacon Defendants claim two grounds for their objections. First, the Beacon Defendants claim such a topic should only apply to NDCRI as managing partner. [DE 141, Page ID# 3501]. Yet, as the NIDC Defendants argue, the partnership funds are being paid "for the legal defense of *all* the Beacon Defendants." [DE 147, Page ID# 3878 (emphasis in original)]. Merely because NDCRI "agreed to provide information relevant to this Item" does not negate the need for the other entities to answer questions about the issue. [DE 141, Page ID# 3501]. Second, the Beacon Defendants argue the testimony on the topic is not proportional to needs of the case. However, the Beacon Defendants' only explanation for this objection is that they have already produced voluminous information about this topic. [DE 141, Page ID# 3502]. The voluminous production is the very reason why deposition testimony is necessary to explain those voluminous documents. A party cannot avoid a corporate deposition topic simply because it has produced too much information on the topic. If anything, the opposite is true.

e.    *Topics 15 & 16*

Topic 15: The various holdbacks reserved by Beacon from the sale of the properties formerly belonging to the Kentucky Partnerships, the decisions by Beacon to reserve those amounts, and the identities of the Beacon employees involved in those decisions.

Topic 16: Beacon's attempts to seek indemnification from NIDC for potential claims related to the interests formerly belonging to Harold Baldwin and the factual and legal bases for those attempts at indemnification.

Like with the last topic, the Beacon Defendants object to these topics despite producing information and documents responsive to these topics during discovery. The Beacon Defendants argue the topics are overly burdensome and not proportional to the needs of the case.   [DE 141, Page ID# 3503-04].   However, despite these boilerplate objections, the Beacon Defendants never elaborate any facts supporting these objections.  "A party objecting to a discovery request must particularly state the objection grounds; a boilerplate objection has no legal effect."  *Davis v. American Highwall Mining, LLC*, No. 6:19-cv-96, 2020 WL 5494520 (E.D. Ky. Sept. 11, 2020) (collecting several authorities in support).  These objections are thus overruled.

f.    *Topics 18-27*

If you listen to the NIDC Defendants, Topics 18-27 merely reflect the various factors set forth above from *Inter-tel*.  If you listen to the Beacon Defendants, Topics 18-27 "seek sweeping testimony" about the Beacon Defendants that is burdensome and disproportionate to the needs of the case.  As is often the case, the truth lies somewhere in between.  The topics are more than a listing of the *Inter-tel* factors, but nearly all are reflective of the intent of those factors.  And while the topics are

sweeping in scope, so too are the factors from *Inter-tel*. Generally, most of the categories raised in topics 18-27 are allowable.

Topics 18 and 19 are straightforward and, as the NIDC Defendants suggest, appear directly from the *Inter-tel* factors. Namely, these two topics ask for the identity of the registered agent for the Beacon Defendants in 2017 and general issues surrounding the corporate structure of the Beacon Defendants. These topics are permissible.

Topic 20 has twelve sub-topics. Many of these are appropriate under *Inter-tel*, such as Topic 20(a) asking about the business functions of the Beacon Defendants or Topics 20(b)-(f) and (k)-(l) asking about agreements between the Beacon Defendants to share employees or costs or the overlapping officers of the companies. Again, all these topics reflect the *Inter-tel* factors. Topic 20(g) seeks the number of employees employed by each of the Beacon Defendants. To the extent the topic requires the Beacon Defendants to identify each employee, the topic is too onerous. However, simply identifying the number of employees is permissible and far from burdensome. Topic 20(h) seeking the "salary, wages, bonuses, or other compensation" of every employee at the Beacon Defendants goes too far. There is nothing in *Inter-tel* that would suggest this granular level detail is necessary to establish the alter ego theory. The Court agrees with the Beacon Defendants on Topic 20(h). In stark contrast, Topic 20(i) has limited compensation information to twenty employees. Moreover, Topic 20(i) is not asking the amounts of salaries, bonuses, etc. paid to these employees, but simply the entity making the payments. As structured, Topic 20(i) fits within the

framework of *Inter-tel*. Topic 20(j) likewise keeps the issue broad and avoids the granular request. Namely, the topic seeks the identity of bank accounts, lines of credit, etc. that are shared by the Beacon Defendants. Because the NIDC Defendants are not seeking information about the day-to-day banking transactions but merely the sharing of assets and operations, the topic is worthy of discovery.

Topic 21 seeks three categories of financial health or capitalization regarding the Beacon Defendants, a clear factor under *Inter-tel*. Topic 22 identifies the issuance of stock by the Beacon Defendants, the lack of which is an explicit factor under *Inter-tel*. The exact same justification applies for the payment of dividends identified in Topic 23. Topic 24 askes about board members, board meetings, and board meeting minutes from the Beacon Defendants. Again, the topic is explicitly identified by *Inter-tel*. Topics 25 and 26 ask about the identity of officers and directors of the Beacon Defendants. And Topic 27 asks the issue of whether the Beacon Defendants have filed separate tax returns in the relevant years. All these topics fit neatly into the lengthy factors of *Inter-tel*.

The Court appreciates that the Beacon Defendants strongly disagree with both Blevins-Clark's and the NIDC Defendants' claims of piercing the corporate veil. But the Court has permitted those claims to go forward. And, for the most part, the NIDC Defendants have identified topics that echo the factors of Inter-tel. Despite the Beacon Defendants disdain for those claims, discovery must move ahead. Except as stated, the Beacon Defendants' objections to these topics are overruled.

g.    *Topics 28-32*

As the NIDC Defendants described them, Topics 28-32 identify issues surrounding the corporate structure and relationship between the Beacon Defendants and other, non-party entities.  [DE 137, Page ID# 3154].  The Court concurs that many of the circumstances raised by the NIDC Defendants fit squarely within the factors established in *Inter-tel*.  However, as the Beacon Defendants argue, these are non-parties and are not subject to claims of piercing the corporate veil.  [DE 141, Page ID# 3505-06].  The legal issue before the Court and parties is whether the Beacon Defendants serve as an alter ego to each other.  Casting about discovery into the corporate structure, finance, and governance of non-parties goes too far without further justification from the NIDC Defendants (*i.e.*, Albany Manor, Mount Ebal). The Beacon Defendants' objection is sustained.

h.    *Topics 33 and 34*

Topic 33: Any due diligence performed by any of the Beacon Defendants prior to August 17, 2020 to confirm whether any of the following were admitted as partners to any of the Kentucky Partnerships in accordance with the requirements of the written partnership agreements for the Kentucky Partnerships: Estate of Ivan G. Blevins; Ivan Blevins Associates Inc.; and Laura Blevins-Clark.

Topic 34: Any due diligence performed by any of the Beacon Defendants prior to 2021 to confirm whether Ivan Blevins Associates Inc. was a legal entity registered, and in good standing, with any state's secretary of state.

The Beacon Defendants generally object to these topics concerning the due diligence conducted by the Beacon Defendants due to concerns over the attorney-client privilege and work product doctrine.  To be sure, some of the due diligence conducted by the Beacon Defendants may have been performed by counsel.  And, as

the Beacon Defendants noted, counsel can provide legal advice concerning a business function.  [DE 141, Page ID# 3506 (citing *In re Search of Info. Associated with Rickmaike@Yahoo.Com*, 2020 U.S. Dist. LEXIS 136406, \*27-28 (W.D. Ky. 2020)].  However, simply because an attorney is involved does not mean everything that attorney touches become privileged.  *Jackson v. Ethicon, Inc.*, 566 F. Supp. 3d 757, 763 (E.D. Ky. 2021) (holding that "the [attorney-client] privilege 'protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege and is triggered only by a client's request for legal, as contrasted with business advice.'").  *See also In re Energy Conversion Devices, Inc.*, 659 B.R. 103, 123 (E.D. Mich. 2024) ("Courts have held that '[w]here business and legal advice are intertwined, the legal advice must predominate for the communication to be protected.'") (internal citations omitted).  Moreover, the Beacon Defendants never suggest that only attorneys conducted due diligence.  And, most importantly, even if the Beacon Defendants learned of some facts through legal advice, the underlying facts learned during due diligence is not protected by the attorney-client privilege.  For example, if counsel discovered during due diligence some tax document, the tax document itself is discoverable while the advice counsel provided to the Beacon Defendants about the legal import of that tax document is protected.  A party cannot use the privilege to shield facts from discovery.  *See E.I. Dupont de Nemours and Co. v. Kolon Industries, Inc.*, 269 F.R.D. 600, 604 (E.D. Va. 2010) (discussing that the attorney-client privilege and work product doctrine do not safeguard from discovery the facts underlying the communication).

**B.   NIDC DEFENDANTS' EFFORT TO COMPEL WRITTEN DISCOVERY RESPONSES FROM THE BEACON DEFENDANTS**

NIDC Defendants have filed a motion to compel [DE 137] the Beacon Defendants to produce information responsive to several written discovery requests as well as providing deposition dates for two facts witnesses.

**1.   Interrogatory No. 18**

The Court previously addressed a discovery dispute concerning Interrogatory No. 18.  [DE 115, Page ID# 1994-95].   The discovery request asks the Beacon Defendants to "[i]dentify every officer, director, or employee partially or wholly responsible for, or involved in, your decisions to withhold either Ivan Blevins's or Harold Baldwin's former interests in the Partnerships from NIDC Housing Corp." [DE 103-3, Page ID# 1650]. The Beacon Defendants responded that monetary funds representing the Blevins and Baldwin interests are being held in an escrow account waiting to be disbursed upon resolution of the litigation. [DE 103-3, Page ID# 1650]. The parties disputed the interpretation of the word "interests" in the interrogatory. The Court held that the Beacon Defendants' response was satisfactory under a clear reading of the word interest.  [DE 115, Page ID# 1994-95].

The NIDC Defendants are not contesting the Court's prior conclusion.  Rather, assuming the Beacon Defendants interpretation of interest is correct, the NIDC Defendants are asking the Beacon Defendants to respond to the remaining portion of the interrogatory: identify representatives that decided to withhold the interests. The Beacon Defendants respond arguing the Court has already resolved this dispute.

[DE 141, Page ID# 3491 ("The Court flatly rejected Co-Defendants' attempt to re-frame the substance of their request through motion practice.")].

The Court previously addressed the interpretation of the word interest. This is a new and different argument than the prior dispute. The Beacon Defendants must, as the interrogatory makes plain, identify the representatives involved in making that decision.

### 2.    Interrogatory No. 19

Like Interrogatory No. 18, Interrogatory No. 19 was also previously addressed by the Court. [DE 115, Page ID# 1995-97]. The discovery request asks the Beacon Defendants to "[i]dentify every present or future 'final payable' or 'representation and warranty' that you allege exists to justify your withholding of funds from the partners in the Partnerships for those purposes, as those withholdings were stated in documents you supplied to the partners of the Partnerships." [DE 103-3, Page ID# 1650]. The prior dispute centered on the Beacon Defendants use of Rule 33(d) to respond to an interrogatory by pointing to its business records, namely its general ledger in this instance. The Court agreed with the Beacon Defendants use of Rule 33(d), but the Court ordered the Beacon Defendants to supplement its response by specifically identifying where in the general ledger responsive information is contained. [DE 115, Page ID# 1995-97].

In response to the Court's ruling, the Beacon Defendants supplemented its response withdrawing its use of Rule 33(d) and responding, in summary, that such calculations of final payable and representations could not be calculated until

dissolution of the partnerships.  [DE 137-7, Page ID# 3277].  Thus, "no amounts have been withheld on that basis."  [DE 137-7, Page ID# 3277].

The NIDC Defendants complain that this answer simply is not true.  They cited to ledger entries, emails, and prior testimony where the Beacon Defendants were able to make some calculations on the issue.  [DE 137, Page ID# 3140-41].  The Beacon Defendants countered "there is nothing further that the Beacon Defendants can presently provide in response to these discovery requests, not until there is more certainty concerning the outcome of this action, and whether a dissolution will occur upon termination of this litigation."  [DE 141, Page ID# 3492].

In the end, a party is entitled to amend and alter its discovery responses.  A party is entitled to take inconsistent positions subject to attack at trial.  A party is not entitled to ignore its discovery obligations.  Here, the Beacon Defendants have answered the posed interrogatory.  The NIDC Defendants are free to complain that the answer is inconsistent with prior positions and contrary to some ledger entries, emails, etc.  But the Beacon Defendants have met their discovery obligation in answering Interrogatory No. 19.

### 3.    <u>Request for Production of Documents No. 5</u>

The Court has already addressed this dispute once before.  [DE 115, Page ID# 1997-98].  As previously detailed, the NIDC Defendants have sought responses via Interrogatory No. 22 and documents via this request from the Beacon Defendants about the latter's use of partnership funds to pay for litigation costs in this case.  [DE 115, Page ID# 1997-98].  Rather than answer Interrogatory No. 22, the Beacon Defendants pointed to their general ledger for responsive information per Rule 33(d).

The Court accepted the Beacon Defendants' choice but directed that they "must certify the information is contained in those ledgers and identify in the general ledger with particularity where that information is contained." [DE 115, Page ID# 1998].

The Beacon Defendants, in response to the Court's prior ruling, provided specific lines in the general ledger where the NIDC Defendants could discover the information. However, the NIDC Defendants argue that these lines in the general ledger included other financial information making it impossible to discern what funds were used by the Beacon Defendants for litigation costs.

The Beacon Defendants tacitly agree the information is not available in the general ledger but counter that they are not required to create a document responsive to a document request. [DE 141, Page ID# 3493-94]. The Court agrees that the Beacon Defendants are not required to create a responsive document.

However, the Beacon Defendants seek to have their cake and eat it too. "Rule 33(d) applies only in those instances in which **the information sought may be obtained by the examination of the opposing party's business records**, and the burden of obtaining such responsive information is substantially the same for either party." *Mullins v. Prudential Ins. Co. of America*, 267 F.R.D. 504, 514 (W.D. Ky. 2010) (emphasis added). If a party is going to utilize Rule 33(d), as the Beacon Defendants have done here, then the Beacon Defendants must point to a specific business record that, in fact, contains the information. In effect, the Beacon Defendants are arguing that they are not required to respond to Interrogatory No. 22 because they can point to their business records under Rule 33(d). And then, when

the NIDC Defendants are unable to determine the responsive information in those business records, the Beacon Defendants claim that they are not required to create a responsive document under Rule 34. The Beacon Defendants can take one of these tacks but not both. The Beacon Defendants choice would permit them to basically avoid discovery obligations under both Interrogatory No. 22 and Requestion for Production of Document No. 5. This is pure gamesmanship.

The Beacon Defendants can choose one of two options: (a) fully and completely answer Interrogatory No. 22 without the utilization of Rule 33(d) or (b) produce redacted legal invoices demonstrating the same information. Considering the late hour of discovery and the fact the Court has already addressed this issue, the Court has little patience for the Beacon Defendants to complete, in total, one of these choices. The Court will not tolerate further delay.

### 4.    Requests for Admission Nos. 1, 3, 4, and 5

Requests for Admission Nos. 1, 3, 4, and 5 all generally seek the same information from the Beacon Defendants. Namely, on May 7, 2021, a representative of the Beacon Defendants wrote a letter taking a position on a contractual provision in the transfer of the Albany Manor that is inconsistent with their position in this litigation. While Albany Manor is not a part of this litigation, the Court previously determined that discovery regarding this letter and the Beacon Defendants' allegedly inconsistent position is discoverable. [DE 115, Page ID# 2003-04]. The requests for admission ask the Beacon Defendants to admit that their interpretation of the contractual provision in Albany Manor "complied with 'Section 7.18(c) of the partnership agreement.'" [DE 137-13, Page ID# 3329-32].

The Beacon Defendants have objected arguing that the request calls for a legal conclusion. Moreover, the Beacon Defendants respond that they lack sufficient information to respond. Per the Beacon Defendants, "[t]he central issues in this litigation turn on the Court's interpretation of the partnership agreements, jury considerations of the disputed facts, and it remains uncertain whether actions taken under the Albany Manor partnership agreements will ultimately be consistent with that interpretation." [DE 141, Page ID# 3495].

"Requests for admission may relate to [facts and] the application of law to fact. Such requests should not be confused with pure requests for opinions of law, which are not contemplated by the rule. Nor are requests seeking legal conclusions appropriate when proceeding under Rule 36." *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (quoting 7 MOORE'S FEDERAL PRACTICE § 36.108 at 36–26 (3d ed. 2008)). The distinction between the application of law to fact and a legal conclusion is, unfortunately, "not always easy to draw." *Thompson v. Beasley*, 309 F.R.D. 236, 241 (N.D. Miss. 2015) (quoting *Benson Tower Condominium Owners Assoc. v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1196 (D. Ore. 2015) (additional citation omitted)).

Here, there is little question or dispute by the Beacon Defendants that they took a position interpreting the Albany Manor partnership that, at first blush, seems to run contrary to its position in this litigation. Nevertheless, the NIDC Defendants' requests for admission ask the Beacon Defendants to declare their position in the Albany Manor partnership as the correct and valid position. That opinion, however,

is up to the Court to determine. *See Tulip Computers Int'l, B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (determining whether a patent is valid calls for legal conclusion). The Court finds these requests for admission, although a close call, nearer to requests for legal conclusions.

### 5.    Deposition Dates for Paul Bouton and Mary Corthell

The parties agree that both Bouton and Corthell were previously deposed in the litigation in 2023 and 2025, respectively. [DE 141, Page ID# 3495]. NIDC Defendants acknowledge that they are seeking to conduct a second deposition of these individuals. [DE 137, Page ID# 3146]. Thus, NIDC Defendants are seeking leave of the Court via their motion to depose the two witnesses again under FED. R. CIV. P. 30(a)(2)(A)(ii). The basis for the depositions is that, following a prior discovery dispute, the Beacon Defendants produced additional documents concerning Albany Manor. [DE 115, Page ID# 2003-04]. NIDC seeks depositions limited to this newly produced discovery. [DE 137, Page ID# 3146].

However, the Beacon Defendants claim the NIDC Defendants have requested these depositions "without any basis for their request." [DE 141, Page ID# 3488]. The basis seems quite clear. In fact, the Beacon Defendants acknowledge that they have produced documents concerning Albany Manor. "The Beacon Defendants have complied with all discovery obligations and produced the requested documents and communications related to Albany Manor, as ordered by the Court. Co-Defendants admit they have received all relevant materials." [DE 141, Page ID# 3496]. Yet, the Beacon Defendants have taken the position that while they produced the documents,

they have no obligation to produce witnesses to answer questions about those documents. This is simply not how discovery works.

The Court concludes that the NIDC Defendants have leave to re-depose Bouton and Corthell on the partnership agreement pertaining to Albany Manor and any related production made by the Beacon Defendants in response to the Court's ruling such information should be produced [DE 115].

## C. BEACON'S PRIVILEGE LOG

The parties have been duking it out over Beacon's privilege log for the past five months, at minimum. [*See* DE 98]. In early May 2025, Blevins-Clark and NIDC Defendants each filed motions to compel related to the Beacon Defendant's privilege log. [DE 101 and 103]. In the resulting Memorandum Opinion and Order, the Court called the Beacon Defendant's privilege log "so woefully deficient that the Court cannot even assess the appropriateness of the request" for an in-camera review of the documents. *Blevins-Clark v. Beacon Communities, LLC*, 2025 WL 1620714, at *8 (E.D. Ky., June 6, 2025). The Court allowed the Beacon Defendants a "second bite at the apple" "to produce a privilege log that clearly identifies who in the communication is an attorney or legal staff, the basis for withholding the document, and a specific description of why the privilege was claimed." *Id*. The Beacon Defendants produced a revised privilege log (by the Court's count, this is the third one) which is the subject of the current dispute. Blevins-Clark asks that that Court compel production of 75 documents that she argues either patently not privileged or for which the Beacon Defendants have not satisfied their burden of proving privilege. [DE 132, 133, and 145]. NIDC Defendants presents similar arguments that the Beacon Defendants'

privilege log is deficient; however, NIDC Defendants requests the Court conduct an in-camera review of all 658 line-items. [DE 136]. NIDC Defendants also argues that it shares an attorney-client privilege with the Beacon Defendants in their role as managing general partner acting on behalf of partnerships such as NIDC. [DE 136 at 2393-94].

Both Blevins-Clark and NIDC Defendants claim the Beacon Defendants have erroneously withheld documents based on attorney-client privilege where none existed: correspondence between nonlawyers, documents intended for third parties, and business, not legal, advice provided by attorneys. While the Beacon Defendants have extensively revised the privilege log, many of the descriptions remain too vague for the Court to determine whether the privilege applies.

"[T]he burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *The St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005) (footnote omitted); *accord In re Grand Jury Investigation* No. 83-2-35, 723 F.2d 447, 454 (6th Cir. 1983). *See also Reynolds*, 2016 WL 7330067, at *3 ("[I]t is the proponent's duty to offer sufficient detail to each supposedly privileged document to persuade the court that the information in question is not discoverable."). "[A] claim of privilege can be defeated by proof by a preponderance of the evidence . . . that the privilege has been waived or that the communication or material is either outside the scope of . . . the privilege[.]" *Stidham v. Clark*, 74 S.W.3d 719, 727 (Ky. 2002).

One method of establishing by a preponderance of the evidence that a particular communication is outside of the privilege scope is via *in camera* review. "[A] lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege." *Stidham*, 74 S.W.3d at 727 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989), and expressly applying the *Zolin* standard to Kentucky privilege claims). Still, to justify *in camera* review, the party opposing the privilege "must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes" the privilege's inapplicability. *Zolin*, 491 U.S. at 572. "[T]he threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged." *Id.* Upon satisfaction of the threshold showing, "the decision whether to engage in *in camera* review rests within the sound discretion of the trial court[.]" *Stidham*, 74 S.W.3d at 727. In exercising its discretion, the Court should consider

> such factors as the volume of materials the court is asked to review, the relative importance of the alleged privileged materials to the case, and the likelihood that the evidence produced by an *in camera* review, together with other available evidence then before the court, will establish that the privilege has been waived or that the communication or material is either outside the scope of the privilege or within a specified exception to the privilege.

*Id.* Certainly, the Beacon Defendants' prior privilege log, which had both insufficient descriptions and included non-privileged materials, has raised concerns for Blevins-Clark and NIDC regarding the accuracy of the revised privilege log and the possibility that it includes nonprivileged matters. The descriptions, such as "Correspondence to gather information needed by Beacon Communities' counsel to provide legal opinion"

[DE 132-1 at Page ID# 2108] may very well be privileged communications between two nonlawyers; however, it may not be. The Court fears that requiring the Beacon Defendants to create yet another revised log will put them in the uncomfortable position of risking either violating the Court's order or exposing privileged information.

Although *in camera* review of 658-line items is time consuming for the Court, it is the most just solution for all parties in this scenario. Without such a review in this circumstance, the Court doubts it can accurately rule on the claimed privilege in the log. The Court will deny Blevins-Clark's motion to compel and grant NIDC's motion for *in camera* review.

### D.    NIDC DEFENDANTS' REQUEST FOR SANCTIONS

In a single footnote on the first page of their memorandum, the NIDC Defendants ask the Court to impose sanctions on the Beacon Defendants. As the Court mentioned at the start, the Beacon Defendants' efforts at obstruction are well documented in this case. To be sure, the current motion practice only adds more proof to the argument that the Beacon Defendants are acting in a grossly negligent manner in responding to their discovery obligations. But the Court will not employ draconian sanctions via just a footnote. It will require a more extensive argument with comparable precedent. Until that motion is made and supported and the Court has fully examined the merits of that motion along with the Beacon Defendants' full response, the Court remains disinclined to impose sanctions.

### III.    CONCLUSION

For the reasons set forth above, Blevins-Clark's Motion to Compel a Beacon Corporate Representative [DE 134], NIDC Defendants' Motion to Compel the Beacon Defendants to Respond to Written Discovery and to Provide Witnesses for Depositions [DE 137], and Blevins-Clark's Second Motion to Compel a Privilege Log [DE 132], and the NIDC's Motion to for In-Camera Review and to Compel Production [DE 136] are **GRANTED IN PART** and **DENIED IN PART** as detailed above.

**IT IS ORDERED** that by October 15, 2025, the Beacon Defendants shall provide to chambers all withheld line items from its privilege log for *in camera* review. Each line shall be a separate .pdf document with the first character of the file name corresponding to the privilege line number.  Items that have been produced need not be included for the *in camera* review.

The undersigned enters this Memorandum Opinion and Order on non-dispositive pretrial matters pursuant to Rule 72(a) and 18 U.S.C. § 636(b)(1)(A).  A party may serve and file objections to this Order, to be considered by the District Judge, within 14 days after being served with a copy.

Entered this 26th of September, 2025.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY