**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **LAURA BLEVINS-CLARK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 5:22-CV-00281-GFVT-MAS |
| | ) |
| **BEACON COMMUNITIES, LLC,** *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Not to be outdone by the other parties' discovery issues in this case, Defendant NDC Realty Investments, Inc. (NDCRI)[1] moves to compel discovery from Defendants/Crossclaim-Plaintiffs NIDC Housing Corp. ("NIDC") and Malvern Service Corp. ("Malvern"). [DE 138]. NIDC/Malvern jointly responded in opposition to the motion [DE 143] and NDCRI replied. For the reasons below, the motion will be granted in part and denied in part.

NDCRI makes several arguments about the inadequacy of NIDC and Malvern's discovery responses, but the over-arching theme of its motion is that NIDC and Malvern did not conduct a satisfactory search for documents, and, consequently,

---

[1] NDCRI is part of the group referred to in this litigation as "The Beacon Defendants." The Beacon Defendants include NDC Realty Investments, Inc., Keystone Values, LLC, NDC Real Estate Management LLC, Beacon Communities, LLC, and The Beacon Companies, Inc.

its answers to interrogatories and requests for production of documents are insufficient. In general, the Court agrees with NDCRI that the documented measures NIDC and Malvern undertook to identify and produce relevant discovery was, at best, rudimentary and, at worst, wholly inadequate. However, when analyzing each of the answers to interrogatories that NDCRI claims are insufficient, the Court cannot, on the record before it, compel additional responses on all. The Court recognizes that if NIDC/Malvern's search was as cursory as it appears to be, the responses to the requests for production of documents and the answers to interrogatories may change significantly.

## I. LEGAL STANDARD

The scope of discovery is broad, and within the wide discretion of the trial court. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). FED. R. CIV. P. 37 permits a motion to compel discovery where "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(iii) and (iv). Rule 26(g) requires parties to certify they have made a "reasonable inquiry" in responding to discovery and producing documents.

## II. ANALYSIS

The factual background of this case is complex and has already been set forth in several court opinions. [DE 71, 114, 115, and 116]. There is no need to repeat this history another time.

It its Motion to Compel, NDCRI argues NIDC's answers to Interrogatories Nos. 6, 7, 9, and 11, as well as Malvern's answers to Interrogatory No. 11, were insufficient. NDCRI points to NIDC and Malvern's search efforts, addressed below, as evidence that their answers to interrogatories must be incomplete. The Court addresses each Interrogatory and answer in turn, below.

A. **NIDC's Answers to Interrogatories**

> **INTERROGATORY NO. 6:** Identify each person Defendants have communicated with regarding the interest of Blevins-Clark or Ivan Blevins in the Kentucky Partnerships.
>
> **ANSWER:** Defendant objects to the scope of this Interrogatory as overly broad, disproportionate to the needs of the case, unduly burdensome, and vague. Subject to and without waiving any objections, Defendant states that, since approximately late 2021 or early 2022, Defendant has communicated with the following individuals regarding Ivan Blevins's former interests in the Kentucky Partnerships and Plaintiff's claim thereto: Jamie Pennington, Paul Bouton, Nicole Clement, Jessica Woodward, Laura Blevins-Clark, and her former attorney Craig Cox. That list excludes depositions conducted by counsel.

NDCRI is frustrated with the time limitation NIDC imposed on its answer to Interrogatory No. 6. NDCRI requested all Interrogatories be answered from 2010 forward. [DE 138-2 at Page ID# 3378-79]. While NIDC objects to the breadth of the Interrogatory generally, it answers the question as to some portion of the requested time. NIDC's response brief attaches an email from its counsel to counsel for NDCRI explaining that the dates in the answer to Interrogatory No. 6 were "clarifying information" not a describing of withheld information, and, in any event, NIDC did not have responsive communications prior to 2021. This emailed explanation adequately answers the Interrogatory, however, it is an email, not an attested to discovery response. The Court reads the time limitation in the answer to

3

Interrogatory No. 6 in the same manner as NDCRI. NIDC must fully answer the Interrogatory dating back to 2010, or explain, as it did in its email, that no additional communications exist. Either way, more is required and more must be verified.

> **INTERROGATORY NO. 7:** Identify any individual Defendants have communicated with who is currently, or was formerly, employed by NDCRI, regarding the Litigation or the Kentucky Partnerships.
>
> **ANSWER:** Subject to and without waiving any objections, Defendant states that it has communicated with individuals employed by one or more of the Beacon Defendants, but Defendant does not possess information to identify the employer of each.

NDCRI qualified Interrogatory No. 7 by requesting only the names of individuals "employed by NDCRI." NIDC states that it knows it communicated with individuals employed by the group of companies referred to in this litigation as the Beacon Defendants but does not specifically know which ones were employed by NDCRI. NDCRI argues, essentially, that it knows of at least one NDCRI employee that communicated with NIDC, and that NIDC should know where these individuals were employed. However, NDCRI's knowledge of who its employees were is not evidence that NIDC had the same knowledge. There is no evidence that NIDC would know which individuals in the large family of Beacon companies were specifically employed by NDCRI. "[T]he test usually applied in ruling on an objection to an interrogatory is whether the interrogatory would be proper if asked of the witness on the stand." *Carstens v. Great Lakes Towing Co.*, 71 F. Supp. 394, 395 (N.D. Ohio 1945). It would be improper for a representative to NIDC to answer such a question on the witness stand if NIDC has no knowledge of who was employed by NDCRI. NIDC has fully answered this Interrogatory.

4

**INTERROGATORY NO. 9:** Identify any communications between Defendants, including any of Defendants' agents, representatives, or attorneys, with Blevins-Clark or Ivan Blevins.

**ANSWER:** Defendant objects to the scope of this Interrogatory regarding communications with Ivan Blevins as irrelevant, overly broad, unduly burdensome, and not reasonably calculated to lead to discoverable information, as Defendant's business relationship with Ivan Blevins began more than forty years ago. Subject to and without waiving any objections, pursuant to Federal Rule of Civil Procedure 33(d), Defendant refers NDCRI to documents already produced by Defendant in this case (Bates labeled NIDC_000320-327, NIDC_000410-416, NIDC_000431-432).

When an "answer to an interrogatory may be determined by examining . . . a party's business records (including electronically stored information), . . . the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." FED. R. CIV. P. 33(d).

Notwithstanding the Court's analysis of NIDC's insubstantial search, *infra*, at this juncture the Court takes NIDC at its sworn word that the listed documents are the only responsive communications to this Interrogatory. The Court cannot compel NIDC to produce documents that do not exist, nor can it require NIDC to prove the negative. NIDC has fully answered this Interrogatory.

**INTERROGATORY NO. 11:** With respect to any and all damages that Defendants claims to have suffered as a result of any alleged act or omission of the Beacon Defendants for which Defendants seeks recovery, please:

(a) Identify each and every item and category of damages; and

(b) Separately for each item of damages, specify the dollar amount Defendants seek and the method and manner by which Defendants calculated each such dollar amount.

**ANSWER:** Subject to and without waiving any objections, Defendant intends to recover damages as follows:

1. Any amount for which Defendant is held liable to Plaintiff in this case.

2. The full value of assets attributable to Ivan Blevins's former interests in the Kentucky Partnerships.

3. The full value of assets attributable to Harold Baldwin's former interests in the Kentucky Partnerships.

4. The portions of all money held back by the Beacon Defendants (following the sale of the properties formerly owned by the Kentucky Partnerships) that are attributable to the interests of NIDC Housing Investors 1979-I and NIDC Housing Investors 1979-III and to the former interests of Ivan Blevins and Harold Baldwin.

5. The portions of all money belonging to the Kentucky Partnerships used by the Beacon Defendants to pay for their legal fees in this in this case that are attributable to the interests of NIDC Housing Investors 1979-I and NIDC Housing Investors 1979-III and to the former interests of Ivan Blevins and Harold Baldwin.

6. Interest on all funds described above.

Discovery in this case closes on October 31, 2025. [DE 130]. In its answer to Interrogatory No. 11, NIDC has described the categories of damages but not the specific amounts or methods of calculation, which it states in its brief that it cannot yet determine. Although this response is sufficient for now, the Court assumes NIDC will supplement this response by the time required in the Scheduling Order and Federal Rules. *See* FED. R. CIV. P. 26(e).

**B.     MALVERN'S ANSWERS TO INTERROGATORIES**

**INTERROGATORY NO. 11:** With respect to any and all damages that Defendants claims to have suffered as a result of any alleged act or

6

omission of the Beacon Defendants for which Defendants seeks recovery, please:

(a) Identify each and every item and category of damages; and

(b) Separately for each item of damages, specify the dollar amount Defendants seek and the method and manner by which Defendants calculated each such dollar amount.

**ANSWER:** Subject to and without waiving any objections, Defendant intends to recover damages as follows:

1. Any amount for which Defendant is held liable to Plaintiff in this case.

2. Interest on all funds described above.

The Court's analysis of Malvern's answer to Interrogatory No. 11 is the same as its analysis of NIDC's answer to No. 11, above. According to its answer, Malvern's damages are entirely contingent on whether it is held liable to Plaintiff and in what amount, as well as interest on that amount. Malvern does not have to disclose a more specific number at this time. *See* FED. R. CIV. P. 26(e).

C.  **NIDC AND MALERN'S RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS**

The crux of NDCRI's motion to compel is that when the Beacon Defendants deposed Max Perry, former general counsel for NIDC and Malvern, "it became apparent that NIDC and Malvern have never undertaken the most basic of searches for documents and communications responsive to NDCRI's discovery requests." [DE 138 at Page ID# 3341]. Upon review of the record, the Court agrees NIDC and Malvern's efforts, as described by Perry, fall far short of what is required by FED. R. CIV. P. 34. NDCRI raises several specific examples of this failure, which NIDC and Malvern describe as "distortion" of testimony and facts. [DE 143 at Page ID# 3722

7

and 3730]. The accuracy of the specific examples[2] of whether certain documents exist or are in the possession of NIDC and Malvern is immaterial because the record suggests NIDC and Malvern have not undertaken a thorough search.

Under oath, Perry testified extensively about what he did, or more accurately, did not do to locate documents responsive to NDCRI's request for production of documents. [Perry Deposition Excerpts, DE 138-1]. Perry stated that "if documents were produced, I did the search" which included asking a few other employees about responsive documents because "[w]ord gets around. It's a small office." [DE 138-1 at Page ID# 3363].

Perry reaffirmed he personally "would have done the work to produce the answers or the document. [DE 138-1 at Page ID# 3363]. Considering this representation, the Court finds Perry's description of his search for responsive documents insufficient.

> Q. What about the search for responsive e-mails; do you have any recollection of being involved in any electronic e-mail searches in discovery for this case?
>
> A. I don't know if for this case or for the original search that I did for Jamie. I mean I went through everything. I asked everybody in the office whether there was anything regarding Blevins and Baldwin. And I got my answers. I got the documents, if any. I looked through my files which is the best repository that I know of and I certainly searched my computer.
>
> Q. Do you know if anyone else's computers were searched for responsive e-mails in this case?

---

[2] One such example is whether documentation of William Balsinger notifying NIDC of the death of Harold Baldwin ever existed and, if so, whether it is currently in the possession of NIDC.

A. I don't know that.

. . .

Q. Okay. So request for production number 11: Please provide all e-mails, text messages and written correspondence exchanged between any employees of any of the defendants concerning the ownership interest of the plaintiff in the apartments or her exclusion from the partnership agreements between 2010 and 2022. So that was a request. And the response said subject to and without waiving their general objections Malvern and NIDC will provide responsive documents. So my question is what was the process utilized to search for responsive e-mails and text messages and other written correspondence in regards to that request?

A. I believe during that period of time I was the only one that would have received any documentation. Bill Balsinger or your group. So I produced everything I had that was responsive. I don't know who else would have had anything.

Q. Okay. And I take it then you did not search anyone else's computer within the organizations?

A. I personally did not. I personally did not search any other computers.

Q. Did you direct anyone else within NIDC Housing Corp or Malvern Service Corp to conduct a search for e-mails, text messages, and other written correspondence that would have been responsive to request for production number 11 served by Plaintiff Laura Blevins-Clark?

A. I am not aware of searching anybody's computers.

Q. And is that true with regard to responding to all discovery in this case or just request for production number 11 that I just read to you?

A. I don't really remember, but my practice is to go around the office and ask people if they have anything responsive. I don't think there is anything else.

Q. Okay. Well, let's just talk about maybe e-mails with Mr. Balsinger because I haven't seen any. Did you search for e-mails between Mr. Balsinger and the folks within NIDC Housing Corp and Malvern Service Corp at any point in time in connection with this litigation?

A. I don't recall searching for anything with respect to that particular discovery request. I don't remember it specifically.

. . .

Q. Were any PST files collected within Malvern Service Corp or NIDC Housing Corp, Inc in order to respond to any discovery requests served upon those two organizations in this case?

A. What's PFT (sic)?

Q. PST files.

A. What are PST files?

. . .

Q. Did you go through any boxes of their files to search for communications they might have had with Mr. Balsinger concerning the Kentucky partnerships in the 2010 to 2017 time frame?

A. No.

Q. Did you go through any of the e-mail accounts belonging to the personnel who used to serve in the Asset Management Department to search their e-mails for communications they might have had with Mr. Balsinger between 2010 and 2017 concerning the Kentucky partnerships?

A. Did I sit down at somebody's computer and start going through it; no.

. . .

Q. Okay. And nor do you have any recollection of searching for paper files generated by the Asset Management Department in order to respond to any discovery requests in this case. Correct?

[attorney objection]

A. We normally ask people and if they have some information to search their own e-mail. So I don't, it's been too long for me to remember specifically what I did to produce documents pursuant to that document request that you've mentioned.

. . .

Q. Okay. And do you recall having any documents pulled from Iron Mountain in order to respond to discovery requests in this case?

A. I don't recall.

[DE 138-1]. Perry testified he asked around the office for responsive documents. However, he either did not recall or did not know if computers, email servers, and off-site physical files were searched for responsive documents. Rather than a proper search with an agreed-upon electronically stored information (ESI) protocol, Perry testified he relied on his long tenure with Malvern to "ask[ ] everybody in the office" and search his own computer. It is entirely unclear to the Court, and apparently to NDCRI, what, if any, ESI protocols Perry used to determine if responsive documents existed. Regarding physical files, Perry cannot recall what, if any, physical files he searched and whether he retrieved any files from NIDC/Malvern's off-site storage facility.

NIDC and Malvern advance several arguments in their response that do not address the heart of the issue. NIDC claims NDCRI "does not identify a single specific document request to which NDCRI claims NIDC insufficiently responded," but NDCRI specifically pointed to NIDC's responses to Requests Nos. 2, 3, and 4, where NIDC only referred to previous production. According to NDCRI, the previous production only included 20 electronic documents that all related to Max Perry, supporting the argument that NIDC and Malvern only searched limited files that Perry was "the only individual at NIDC or Malvern who performed any search for responsive documents" while large swaths of information, such as the asset management department's files, went untouched. [DE 138 at Page ID# 3352]. NIDC and Malvern claim they produced over 500 electronic documents. Similarly, the Court puts no weight on NIDC and Malvern's argument that counsel for NDCRI

11

asked Perry about responses to Blevins-Clark's Requests for Production of Documents, rather than the NDCRI's Requests. Perry testified repeatedly during that line of questioning as well as throughout the deposition excerpt in the record, that he was describing his usual practice, which applied both to responding to Blevins-Clark's discovery as well as NIDC and Malvern's.

NIDC and Malvern argue that they are "a small operation with few employees" and, therefore, the search conducted by Perry was sufficient considering the scope involved. [DE 143]. This litigation involves a spiderweb of corporations and factual disputes dating back to 2010. Solely relying on one individual's "computer search" (whatever that means) and employees' memories as to whether "there was anything regarding Blevins and Baldwin" is insufficient even for a small company with few employees. Rule 26(g)(1) requires attorneys and parties to "certify[y] that to the best of the person's knowledge, information, and belief formed *after a reasonable inquiry*" that responses are consistent with the Federal Rules and not interposed to cause unnecessary delay or needlessly increase the cost of litigation. FED. R. CIV. P. 26(g)(1) (emphasis added).

Nor is the Court satisfied by the affidavit from Daniel George Majoros, in what appears to be an attempt to "clean up" Perry's testimony, stating that it was NIDC and Malvern's practice to search physical files "by partnership or project, identify[ ] boxes and folders of files that may contain responsive documents" and searching those boxes. [DE 146-3 at Page ID# 3793]. Majoros's affidavit addresses only one of many concerns and not well. Majoros fails to state whether this "typical practice"

12

was followed in this matter. He fails to state what search parameters were utilized, who conducted the search, and whether any documents were produced from the search. There is not enough information in Majoros's affidavit for the Court to make any assessment about the document production in this case.

NIDC and Malvern have yet to demonstrate they have made a "reasonable inquiry" to locate documents responsive to discovery requests. The Court does not propose that any additional responsive documents exist, but the search was not adequate to determine whether additional responsive documents exist. The Court is particularly troubled by the fact that NIDC and Malvern utilize their response primarily to explain why the documents NDCRI and Blevins-Clark requested do not exist rather than to make assurances that documents were appropriately subjected to a litigation hold and search procedures that went beyond one man's (seemingly fuzzy) memory.

> Where a party does not have responsive documents, it must come forward with an explanation of the search conducted with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence. Information regarding the search conducted should be provided through declarations under oath detailing the nature of the efforts to locate responsive documents.

*EnvTech, Inc. v. Suchard*, 2013 WL 4899085, *5 (D. Nev. Sept. 11, 2013) (accord, *Catrinar v. Wynnestone Communities Corporation*, 2016 WL 1084687, at *2–3 (E.D. Mich., Mar. 21, 2016). The Courts will adopt a similar procedure here. The Court believes it has sufficient information from the briefs and exhibits in the record to order NIDC and Malvern to undertake another, more comprehensive search for responsive documents. Upon completion of a search that complies with Rule 26's

13

"reasonable inquiry" requirement, NIDC and Malvern must file with the Court a sworn declaration explaining "the search conducted with sufficient specificity to allow the court to determine whether the party made a reasonable inquiry and exercised due diligence." *Id.* NIDC and Malvern must include in this declaration what litigation holds were placed on their documents and when, as their response did not mention that issue.

D.  **FORMAT OF FILE PRODUCTION**

NDCRI argues that NIDC and Malvern produced their electronic documents in .pdf format with no metadata. NIDC and Malvern have no answer to this, other than to say that the Beacon Defendants also produced their files in .pdf format without metadata. [DE 143 at Page ID# 3730]. If NIDC and Malvern wish to obtain files in a different format, they can make that request. However, what is before the Court is NDCRI's request for files in their native format with metadata.

There is no evidence in the record that NDCRI originally asked for NIDC and Malvern's production in native format. [DE 138-2]. Where "a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." FED. R. CIV. P. 34(b)(2)(E)(ii) and (ii). It is entirely reasonable to interpret Rule 34's requirement to produce documents as they are "kept in the ordinary court of business" to mean their native format. FED. R. CIV. P. 34(b)(2)(E). Additionally, producing .pdf documents without metadata is not a "reasonably usable form" in today's technological landscape. Metadata is an integral part of the documents, or, as this Court has previously noted, producing documents without the underlying

14

metadata "is the equivalent of manufacturing a car without an engine—a shell without much use." *In re Onglyza (Saxagliptin) and Kombiglyze XR (Saxagliptin and Metformin) Products Liability Litigation*, 2019 WL 5777377, at *2 (E.D. Ky., Nov. 5, 2019).

NDCRI should have specified the format it preferred in its discovery requests. However, NIDC and Malvern's production is incomplete without the metadata necessary to understand the documents produced. NIDC and Malvern have made no arguments that producing the metadata will be unduly burdensome. *See In re Porsche Cars North America, Inc. Plastic Coolant Tubes Products Liability Litigation*, 279 F.R.D. 447, 450 (S.D. Ohio Jan 24, 2012) ("Once Plaintiffs request native format/metadata at the outset, the burden would shift to PCNA to object to this form as unduly burdensome."). Thus, the Court will order the production of the metadata associated with the documents in a usable format.

### III. CONCLUSION

For the reasons stated above, NDCRI's Motion to Compel [DE 138] is **GRANTED IN PART** as follows:

(1) NIDC must clarify its response to Interrogatory No. 6 with either an objection or statement regarding the dates in its current answer.

(2) NIDC and Malvern must conduct a search compliant with Rule 26(g) to locate responsive documents to NDCRI's Requests for Production of Documents and file a sworn declaration by October 21, 2025, detailing those efforts.

  (3)  NIDC and Malvern must produce all electronic documents in a usable format that includes metadata.

NDCRI's Motion to Compel is **DENIED IN PART** as follows:

  (1)  NIDC has fully answered Interrogatories No. 6, 7, and 11.

  (2)  Malvern has fully answered Interrogatory No. 11.

The undersigned enters this Memorandum Opinion and Order on non-dispositive pretrial matters pursuant to Rule 72(a) and 18 U.S.C. § 636(b)(1)(A). A party may serve and file objections to this Order, to be considered by the District Judge, within 14 days after being served with a copy.

Entered this 26th day of September, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY