## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | |
|---|---|
| **LAURA BLEVINS-CLARK,**      ) | |
| ) | |
| ) | |
| **Plaintiff,**      ) | |
| ) | |
| **v.**      ) | **NO. 5:22-CV-00281-GFVT-MAS** |
| ) | |
| **BEACON COMMUNITIES, LLC, *et***      ) | |
| ***al.,***      ) | |
| ) | |
| ) | |
| **Defendants.**      ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

The Court has spent the past several months grappling with a dispute between the parties concerning the Beacon Defendants'[1] privilege log. [DE 98, 115, 124, 150]. Currently, the Beacon Defendants have produced a privilege log listing 687 documents which they claim are protected by the attorney-client privilege and/or work product doctrine. The Beacon Defendants, after further review, have produced many of the 687 documents.

For the remaining documents, Plaintiff Laura Blevins-Clark and the NIDC Defendants[2] challenged the Beacon Defendants' claim of privilege on several grounds.

---

[1] Defendants Beacon Communities LLC ("Beacon Communities"), The Beacon Companies, Inc. ("Beacon Companies"), Keystone Values LLC ("Keystone"), NDC Realty Investments LLC ("NDCRI"), and NDC Real Estate Management LLC ("NDCREM") are collectively defined as the "Beacon Defendants."

[2] Defendants NIDC Housing Corp. ("NIDC") and Malvern Service Corp. ("Malvern") are collectively defined as the "NIDC Defendants."

[DE 133, 136, 145, 148].  In its prior opinion, the Court granted the NIDC Defendants' request to conduct an *in camera* review of all documents listed in the Beacon Defendants' privilege log.  The Court has now completed its review.  The findings are detailed below.

## I.  LEGAL STANDARDS

### A.  ATTORNEY-CLIENT PRIVILEGE

In this diversity case, Kentucky law governs the application of the attorney-client privilege.  FED. R. EVID. R. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); s*ee In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) ("In a diversity case, the court applies . . . state law to resolve attorney-client claims."); *South Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 Fed. App'x 401 (6th Cir. 2019) (applying Kentucky attorney-client privilege law in a diversity case).  Kentucky Rule of Evidence ("KRE") 503 provides the Commonwealth's equivalent of the attorney-client privilege.  It safeguards a client's ability "to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client[.]"  KY. R. EVID. 503(b).  KRE 503 extends to communications:

> Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
>
> Between the lawyer and a representative of the lawyer;
>
> By the client or a representative of the client or the client's lawyer or a representative of the lawyer representing another party in a pending action and concerning a matter of common interest therein;

Between representatives of the client or between the client and a representative of the client; or

Among lawyers and their representatives representing the same client.

*Id*.

"[T]he burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *The St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005) (footnote omitted); *accord In re Grand Jury Investigation* No. 83-2-35, 723 F.2d 447, 454 (6th Cir. 1983). "[I]t is the proponent's duty to offer sufficient detail to each supposedly privileged document to persuade the court that the information in question is not discoverable." *Reynolds v. Wells*, No. 16-SC-134, 2016 WL 7330067, at *3 (Ky. 2016).

## B. WORK-PRODUCT DOCTRINE

In contrast to the attorney-client privilege, the protection afforded by the work-product doctrine is governed by federal law. "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). "The current doctrine, as set forth in Federal Rule of Civil Procedure 26(b)(3), protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). "The doctrine is designed to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests.'" *In re*

*Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). "The 'written or oral information transmitted to the attorney and recorded as conveyed by the client,' . . . may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship." *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). "A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" *Roxworthy*, 457 F.3d at 593 (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006)).

## II.    ANALYSIS

The Court conducts its analysis beginning with the larger issues and moving to the granular. Namely, the NIDC Defendants have advanced two different arguments that would, in many regards, vitiate the Beacon Defendants' claim of privilege. The Court will examine those arguments first. If those arguments fail, the Court will then turn to the document-by-document, *in camera* analysis of the Beacon Defendants' privilege log.

### A.    FIDUCIARY EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege is certainly one of the most valued legal principles in our jurisprudence. "The attorney-client privilege is not 'ironclad,' however, and is subject to exceptions." *Thies v. Life Ins. Co. of North America*, 768 F. Supp. 2d 908, 911 (W.D. Ky. 2011) (internal citations omitted). "One such exception is the fiduciary exception, which requires that 'when an attorney gives advice to a client who is acting as a fiduciary for third-party beneficiaries, that attorney owes the

beneficiaries a duty of full disclosure.'" *Id.* (quoting *Parker v. Stone*, No. 3:07-cv-00271 (VLB), 2009 WL 1097914, at *2 (D. Conn. Apr. 21, 2009) (citing *In re Long Island Lighting Co.*, 129 F.3d 268 (2d Cir. 1997)). Although broadly defined, courts have repeatedly cabined the exception and the scope of its application.

For example, one context in which the fiduciary exception often arises is disputes under Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). "Under ERISA, an employer may perform both fiduciary functions and non-fiduciary functions. In line with other circuits, we have held that an employer acts as an ERISA fiduciary only in plan management or administration, not in the plan's design or amendment." *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997). Thus, the Second Circuit and many other courts have held that the fiduciary exception vitiates the attorney-client privilege on those communications where an employer is acting in the specific role of a fiduciary. *Id.* at 273. *See also Thies*, 768 F. Supp. 2d at 911. All other communications with counsel seeking legal advice remain privileged as there is no overlapping common interest in those communications. *Id.*

Another context, somewhat like ERISA, is a dispute between a corporation and its shareholders. The Sixth Circuit addressed this in *Fausek v. White*, 965 F.2d 126 (6th Cir. 1992). Where a "corporation stands in a fiduciary relationship to those seeking to abrogate the attorney-client privilege[,] [t]here is a mutuality of interests between a corporation and its shareholders that precludes use of the privilege by management to deprive shareholders of information relating to their investments in

5

the corporation." *Id*. at 132 (citation omitted).  Although management has discretion as to how to apply legal advice, when shareholders present a colorable claim of fraud or criminal activity that is inimical to their interests as shareholders, they must be given an opportunity to establish good cause why the attorney-client privilege should not be invoked in their particular case." *Id*. at 133.  Again, like with the ERISA line of cases, where there is an established fiduciary relationship between parties, such a relationship may defeat the attorney-client privilege.  *See also Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

In general, "[t]he *sine qua non* of the *Garner* Rule [or fiduciary exception] is that the actors in the fiduciary relationship have a 'mutuality of interest' in seeking advice." *Lugosch v. Congel*, 219 F.R.D. 220, 243 (N.D.N.Y. 2003).

NIDC Defendants argue that, to the extent the Beacon Defendants have asserted the attorney-client privilege, the privilege is negated by the fiduciary exception.  Per NIDC Defendants, NDCRI was the general partner for four Kentucky partnerships, Greater Corbin Manor, Ltd.; Madison Avenue Apartments Phase I, Ltd.; Beattyville Manor Associates, Ltd.; and Campbellsville Manor Ltd.  Thus, NDCRI owed a fiduciary relationship to those four entities in their operation as well as to the stakeholders in those four entities, including NIDC.

At its broadest level, NIDC Defendants' theory begins to fit the puzzle of the fiduciary exception.  However, upon closer examination, NIDC Defendants are missing many critical pieces.  First, there is no indication that Kentucky has recognized the fiduciary exception.  Although recognized by federal courts for decades

and mentioned in a couple Kentucky district court decisions, there is not a single Kentucky state case discussing the exception.  NIDC Defendants cite *Fausek v. White*, 965 F.2d 126 (6th Cir. 1992), as "binding precedent" on this Court in which the Sixth Circuit applied the fiduciary exception.  [DE 148, Page ID# 3911–12].  However, *Fausek* was interpreting Tennessee state law, not Kentucky state law.  Of the Kentucky district court cases discussing the exception, those courts did so while applying federal law for the attorney-client privilege, not Kentucky state law.  *See Duran v. Hanover Ins. Group, Inc.*, 244 F. Supp. 3d 594 (W.D. Ky. 2016).  As all the parties agree, the attorney-client privilege in this case is governed by Kentucky law, not federal common law.  In the end, NIDC Defendants are asking this Court to adopt a rare exception to the established attorney-client privilege without any jurisprudential support.  The Court is reticent to do so.

Second, even if the Court were to be the first to adopt the fiduciary exception under Kentucky law, NIDC Defendants have not established enough facts to justify the exception's application.  For starters, the maze of entities and their indecipherable interconnections to each other make it almost impossible to determine the breadth of the fiduciary relationships.  The Court understands that NDCRI was a general partner for the Kentucky partnerships, but the Court (unlike the parties) does not fully grasp the interrelationship between what feels like countless partnerships related to this litigation.  For example, if NDCRI did indeed owe a fiduciary relationship to the Kentucky partnership, are the NIDC Defendants suggesting that fiduciary relationship then carries out to any company that has an

interest in those Kentucky partnerships?  What about entities that have an interest in an entity that has an interest in the Kentucky partnership that are managed by NDCRI?  How far out through the maze of partnerships does this fiduciary exception spread?   Does the exception apply just to NDCRI or does the exception also run to entities that have an interest in NDCRI?   Does the fiduciary exception suddenly destroy privilege conversations Beacon Communities is having with its counsel about Beacon Communities' positions about the Kentucky partnerships?  Without more information, the Court is quite lost.

And who has the burden to solve this maze for the Court?  Neither NIDC Defendants nor the Beacon Defendants have addressed who has the burden to establish the exception and whether such burden was satisfied.  While countless courts have implied the burden of establishing the fiduciary exception rests with the party asserting the privilege in ERISA litigation, other courts have placed the burden of the exception on the party challenging the privilege in non-ERISA litigation.  *See Duran v. Hanover Ins. Group, Inc.*, 244 F. Supp. 3d 594, 613–24 (W.D. Ky. 2016) (holding that "while the Sixth Circuit and several district courts within the Sixth Circuit have discussed the [*United States v.*] *Mett*[, 178 F.3d 1058 (9th Cir. 1999)] opinion [placing the burden of proving the fiduciary exception on the party challenging the attorney-client privilege] they have followed what appears to be the majority view when addressing the fiduciary exception in ERISA cases.").  Again, assuming the Court were to apply the exception, the Court lacks evidence to do so,

and the parties have made no arguments about who carries the burden to produce such evidence.

In short, the Court has many reasons to doubt both the legal and factual application of the fiduciary exception in this case. Considering the unanswered questions, the Court is unwilling to apply the exception.

## B.   FRAUD EXCEPTION TO THE ATTORNEY-CLIENT PRIVILEGE

NIDC Defendants next argue that the Beacon Defendants' claim of privilege is defeated by the fraud exception. The Court concludes that the NIDC Defendants are putting the cart before the horse.

Like with the fiduciary exception, the fraud exception would completely vitiate any claim of attorney-client privilege. "All reasons for the attorney-client privilege are completely eviscerated when a client consults an attorney not for advice on past misconduct, but for legal assistance in carrying out a contemplated or ongoing crime or fraud." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986). The crime-fraud exception test is two-pronged. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 382 (W.D. Ky. 2007) (citing *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 625 (6th Cir. 2005)). Initially, the party seeking production must make a *prima facie* showing that a sufficiently serious crime or fraud has occurred, which merits encroaching upon the attorney-client privilege. *Id*. Second, the seeking party must establish some relationship between the communication at issue and the prima facie violation. *Id*. To satisfy this *prima facie* showing, "the evidence presented by the [party seeking production] . . . must be such that 'a prudent person [would] have a reasonable basis to suspect the perpetration of a crime or fraud.'" *Id*. at 382–83

9

(quoting *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997) (citation omitted)). "A mere accusation of wrongdoing, without more, is not sufficient." *Duran v. Hanover Ins. Group, Inc.*, 294 F. Supp. 3d 659, 691 (W.D. Ky. 2018) (citing *Invesco Institutional (N.A.), Inc.*, 244 F.R.D. at 382). "The attorney-client privilege is not vitiated merely because a client is alleged to have committed an unlawful or fraudulent act; there also must be a *prima facie* showing that the confidential communication was involved in the preparation or furtherance of the specific unlawful conduct." *Invesco Institutional (N.A.), Inc.*, 244 F.R.D. at 392 (quoting *Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 481–82 (W.D. Mich. 1997)).

Here, NIDC Defendants argue that the Beacon Defendants (or NDCRI specifically) committed fraud by breaching its fiduciary duty in managing the Kentucky partnerships when it failed to follow the partnership agreements. [DE 136, Page ID# 2398–99]. NIDC Defendants detail which provisions of the partnership agreements they believe the Beacon Defendants breach and the damage it caused. [DE 136, Page ID# 2398–99].

The problem for NIDC Defendants is those allegations are the very basis of their complaint against the Beacon Defendants. "[T]he Beacon Defendants breached the partnership agreements, acted with gross negligence, willful misconduct, or in breach of their fiduciary duty to the other partners and investor limited partner of the Kentucky Partnerships." [DE 73 (NIDC Defendants' Cross-claim), Page ID# 1198]. Although not impossible, the Court is hesitant to conduct a mini-litigation of the attorney-client privilege that is nothing more than a litigation of the entire merits

10

of the larger litigation.  NIDC Defendants certainly have asserted a claim for breach of fiduciary duty and have detailed the reasons they believe the Beacon Defendants' interpretation and actions under the partnership agreements was improper. However, the Court will allow that dispute to play out in due course of this litigation. And even if NIDC Defendants are successful in their arguments, the Court has seen no evidence or *prima facie* showing that "the confidential communication was involved in the preparation or furtherance of the specific unlawful conduct." *Invesco Institutional (N.A.), Inc.*, 244 F.R.D. at 392.  Giving every benefit of the doubt to NIDC Defendants, NIDC Defendants provided no such evidence to the Court.

Moreover, the Court has conducted an *in camera* review of the documents, albeit not based upon the allegation of the fraud exception.  *See United States v. Zolin*, 491 U.S. 554, 572–73 (1989) (detailing the standard for *in camera* review because of the crime-fraud exception).  The Court is confident that NIDC Defendants may have evidence supporting their claim of breach of fiduciary duty outside these privileged emails.  But these emails are far from the smoking gun NIDC Defendants seem to suggest.  In other words, NIDC Defendants have not provided sufficient evidence to "satisfy the judge that the light should be let in." *Stidham v. Clark*, 74 S.W.3d 719, 726 (Ky. 2002).

**C.**   *IN CAMERA REVIEW*

Per its prior Order [DE 150], the Court conducted a thorough and complete *in camera* review of all the documents listed in the Beacon Defendants' privilege log provided to the Court.  For the reasons outlined below, the Court finds the majority

11

of the documents are protected by the attorney-client privilege but compels production of the remaining few.

### 1.    **Produced Documents**

Through the course of the numerous discussions, reviews, and challenges to the privilege log for the Beacon Defendants, the Beacon Defendants determined certain documents were not privileged. Those documents have been produced and are identified in their most current privilege log. [*See* DE 132-1]. Thus, the Court recommends those documents be legally classified as not protected by the attorney-client or work product privileges as such protections were waived upon the production of the documents. *In re OM Securities Litig.*, 226 F.R.D. 579, 590 (N.D. Ohio 2005) ("The voluntary disclosure of purportedly privileged material is inconsistent with an assertion of the privilege.") (citing *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)). Such documents would include documents in lines 23, 31, 110, 303, 304, 305, and 558, documents specifically sought by Blevins-Clark [DE 132, Page ID# 2093] for which the Beacon Defendants responded that such documents were already produced [DE 139, Page ID# 3462–63].

### 2.    **Legal Communications with Counsel**

At its simplest, the attorney-client privilege protects communications between a client and counsel discussing legal advice. "The attorney-client privilege is not contingent on actual or threatened litigation." *Collins v. Braden*, 384 S.W.3d 154, 160 (Ky. 2010). Legal advice can come in many forms and through many means.

The vast majority of the communications on the Beacon Defendants' privilege log are communications between the Beacon Defendants' and their outside or in-

12

house counsel. And upon a further, *in camera* examination by the Court, the communications are between an attorney and their client in which the client is seeking legal advice, or the attorney is providing legal advice.

For example, documents 215 through 227 are emails from, to, and between Beacon employees and in-house counsel sent to (at that time) outside counsel Paul Bouton, seeking Bouton's legal advice. Some of these emails were directly to Bouton, while some merely copied him; nonetheless, it is clear the emails were for the purpose of obtaining Bouton's advice about the subject matter within. In document 228, Bouton responds with a lengthy legal analysis. Thereafter, document 228 generated an email string in which Beacon employees disseminated Bouton's advice to Beacon's in-house counsel and other Beacon employees in preparation for a meeting with counsel. Following the meeting with counsel, there was another email thread discussing the meeting with counsel, counsel's advice, and seeking clarification from counsel. These privileged communications encompass documents 229 through 327 (with one exception). These are only a few examples of the privileged communications that fall squarely within KRE 503.

### 3.    <u>Non-Legal Communications with Counsel</u>

While many communications between the Beacon Defendants and their counsel are plainly privileged, that does not hold true for all of them.

"[T]he [attorney-client] privilege 'protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege and is triggered only by a client's request for legal, as contrasted with business, advice." *Univ. of Ky. v. Lexington H-L Servs., Inc.*, 579 S.W.3d 858, 864 (Ky. Ct. App. 2018)

(quoting *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 60 (Ky. 2002) (cleaned up)). Determining whether the privilege applies is a two-prong inquiry. "First, the statements must actually be confidential, meaning they are 'not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.'" *Id.* (quoting *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012)). "Second, the statements must be made for the purpose of obtaining or furthering the rendition of legal services to the client." *Univ. of Ky.*, 579 S.W.3d at 864.

During any back and forth between parties, a person could communicate with counsel discussing business issues, administrative tasks, scheduling meetings, etc. Such communications, as the case law describes above, are not privileged just because an attorney is part of the communication. You cannot simply include an attorney on a communication to shield the communication's content from disclosure.

The Court has identified several documents that include an attorney but are not seeking legal advice. For example:

- Documents 55 and 56 are calendar invitations to counsel with no substantive information included. Scheduling, even with counsel, is not privileged.

- Document 76 is an email from a Beacon nonlawyer employee to several other Beacon employees (including in-house counsel) informing them that the attached letter was sent to a third party. Document 77 is the

14

letter to the third party.  These documents are repeated at 79, 80, 94, 95, 97, 98, 101, 104, 120, 122, and 127.  There is no discussion of any legal advice.

- Documents 388 through 405 are emails to and between in-house counsel discussing the date and time to hold a meeting.  There is nothing more than a vague reference to the subject of the meeting.

- Documents 530 and 531 are emails in which in-house counsel passes on the message that a third party sends warm regards to Jamie Pennington.  Documents 530 and 531 could be produced with redaction of the privileged communications that occur earlier in the email thread.

These documents and several others may have included an attorney, but they did not provide or seek legal advice.  As to NIDC's argument that "it appears that Beacon had a practice of involving lawyers in business teams and functions such that attorneys may have been involved in business communications where they were business advisors or were mere spectators, as opposed to legal advisers[,]" the Court saw no evidence of this practice.  To be sure, Beacon relied heavily on their in-house counsel group for a variety of topics and tasks and liberally copied them on correspondence.

Unquestionably, as the Sixth Circuit explained just last month, Beacon Defendants

> made business decisions based on this legal advice[, but that] does not change matters.  Companies "regularly consult their attorneys about a variety of problems arising in the course of the business." *Swidler & Berlin v. United States*, 524 U.S. 399, 408, 118 S. Ct. 2081, 141 L.Ed.2d

> 379 (1998).  Think of compensation plans, proposed sales, a potential bankruptcy, or decisions to terminate employees. . . . None of these adjacent business purposes for seeking legal advice transforms the communications and legal work into something other than legal advice. . . . [I]t will be the rare company that will not also have business purposes for seeking essential legal advice.  The attorney-client privilege nonetheless plainly applies.

*In re FirstEnergy Corporation*, 154 F.4th 431, 438 (6th Cir. 2025).  As in *FirstEnergy*, in many instances Beacon Defendants' communication with counsel arguably had a business function, but they were also seeking in-house counsel's legal advice or providing information that was used by in-house counsel to provide legal advice. There are certainly gray areas here; however, the communications in this category could all fall neatly within the bounds of a client seeking legal advice even if Beacon Defendants also used the advice for business purposes.  For example, in the string of emails beginning at document number 337, a nonlawyer Beacon employee sends four specific questions to Lisa Reich, a paralegal at Beacon.  Two of the questions are merely requests for business information; however, one is arguably seeking legal advice and the last is clearly seeking legal information that is related to the claims in this case.  Read in its entirety, this email chain falls squarely within the attorney-client privilege as defined in KRE 503.  The Court has carefully reviewed each document to ensure it meets the requirement of seeking or providing legal advice. Documents that do not meet the requirements of KRE 503, even if counsel is included on the communication, must be produced as listed in the attached Table B.

### 4.    **Attachments to Privileged Communications**

Blevins-Clark and NIDC raise concerns over attachments to emails, arguing that Beacon has attached plainly nonprivileged documents to privileged emails, and

then wrongfully claimed attorney-client privilege or work product protection. The Court agrees with Blevins-Clark and NIDC that there are certain documents that must be produced because they are not afforded either protection. "[T]he mere selection of a non-privileged document for disclosure to an attorney could, in some circumstances, implicate the privilege. But documents do not become privileged simply because they have been attached to an email sent to counsel. And absent special circumstances, the discoverability of an attached document must be analyzed independently from that of the email communication." *United States ex rel. Long v. Janssen Biotech, Inc.*, 788 F. Supp. 3d 167, 172 (D. Mass. 2025).

There are many email attachments that were created by Beacon Defendants, "transmitted to the attorney and recorded as conveyed by the client." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). However, the burden is on Beacon Defendants to show that the documents were also created in anticipation of litigation. Beacon Defendants made little effort to meet this burden [*see* DE 142, Page ID# 3520], and the Court finds its effort in that regard wanting.

Examples of attachments to emails that the Court will require the Beacon Defendants to produce are:

- Documents 29, 37, and 40, all of which are IRS forms.

- Documents 77, 80, 95, 98, 101, 104, 120, 122, and 127, all of which are copies of a letter sent from the Beacon Defendants to Harold and Barbara Baldwin.

- Documents 506 through 510, which are letters from Beacon's outside counsel to third parties.

17

These documents have no privilege beyond their attachment to a privilege communication. Thus, the documents are discoverable.

### 5.    Communications Between Non-Lawyers

There are numerous documents in the Beacon Defendants privilege log for which no attorney is listed. The Beacon Defendants fully concede that fact. [DE 139, Page ID# 3464]. However, as the Beacon Defendants point out, there are circumstances in which, while an attorney is not included in the communications, the privilege still attaches.

"In the corporate context, the attorney-client privilege extends to communications, between non-attorney employees, made to obtain or relay legal advice." *McCall v. Proctor & Gamble Co.*, No. 1:17-cv-406, 2019 WL 3997375, at *4 (S.D. Ohio Aug. 22, 2019) (citing several decisions in support).

> A document need not be authored [by] or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds. First, . . . documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys. Second, documents subject to the privilege may be transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately.

*Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *8 (S.D. Ohio Nov. 13, 2012). *See also St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 776–77 (Ky. 2005) (holding that communications between non-attorneys were privileged because it was gathered at the direction of counsel to provide legal advice).

Acknowledging this framework, the Court turns to the documents on the Beacon Defendants privilege log that are communications between non-lawyers. To the surprise of none, the Court finds that there are a number of documents that are

privileged while others are not. For example, the emails and attachments from document 139 through 152 are between nonlawyers (though a lawyer is copied on many of them). The nonlawyers discuss information that is ultimately then communicated to in-house and outside counsel for legal advice. In another example, documents 461, 462, 464–69, and the attachments at 471, 473, and 474, nonlawyer Beacon employees have forwarded an obviously privileged email from counsel to other nonlawyer Beacon employees so that the nonlawyer Beacon employees can prepare for a meeting with Beacon's in-house counsel. Discussion about the privileged email and upcoming privileged meeting is included in these communications.

In contrast, documents 63 through 71 are an email chain that begins with an email from outside counsel but transitions to nonprivileged communications between nonlawyers regarding a letter that was sent to third parties. The Court will instruct Beacon Defendants to redact the email from outside counsel Ali Walendziak and produce the remainder of the communications and attachments from documents 63 through 71. Similarly, document 75 is a string of business-related emails between nonlawyers. The email chain began with an email from counsel that referenced the attachments but included no substance or legal advice. The attachment was a letter sent to a third party, which clearly does not fall within the attorney-client privilege or the work product doctrine.

Once again, this category is a mixed bag of items that the Beacon Defendants properly withheld and communications to which no protection applies.

**D.    S**UMMARY

Although the Court has not addressed each of the 687-line items in detail herein, the examples provided should allow the parties to understand sufficiently the Court's reasoning for deeming a particular communication or document privileged, or, for compelling its disclosure.  To assist the parties further, the Court attaches two tables to this Order and incorporates them herein.

Table A reflects the specific documents Blevins-Clark and/or NIDC raised as potentially wrongfully withheld in their motions that the Court has determined are privileged.

Table B reflects the documents the Court compels Beacon Defendants to produce and a brief description of its reason, as each justification is explained generally above.  Because NIDC Defendants requested, and the Court granted, an *in camera* review of the entire log, and both Blevins-Clark and NIDC raised categorical (not just line-by-line) concerns about the log, the Court reviewed and ruled on every document, not only the ones specifically listed in the briefs. For the privilege log line numbers **not** disclosed in the attached tables, the Court finds the privilege was waived because it was previously produced, **or** the document is protected by the attorney-client privilege and/or work product protection.  Either way, for those numbers, Beacon Defendants need not make any further production.

## III.    CONCLUSION

For the reasons stated above, **IT IS ORDERED** that the Beacon Defendants are **COMPELLED** to produce the documents in the privilege log as indicted in Table

B, attached hereto.  The Beacon Defendants shall have until November 21, 2025, to produce those documents.

The undersigned enters this Memorandum Opinion and Order on non-dispositive pretrial matters pursuant to Rule 72(a) and 18 U.S.C. § 636(b)(1)(A).  A party may serve and file objections to this Order, to be considered by the District Judge, within 14 days after being served with a copy.

Entered this 7th day of November, 2025.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

21